## PICKHARDT *v.* MERRITT.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 97. Argued November 12, 13, 1889. — Decided December 2, 1889.

Dyes or colors called naphthylamine red, orange II, orange IV, and resorcine red J, imported in 1879, were liable to a duty of fifty cents per pound and thirty-five per cent ad valorem under the provision of schedule M of § 2504 of the Revised Statutes, 2d ed. p. 479, imposing that rate of duty on " Paints and dyes — aniline dyes and colors, by whatever name known," although none of them were known in commerce before 1875; if, according to the understanding of commercial men, dealers in and importers of them, they would, when imported, be included in the class of articles known as aniline dyes, by whatever name they had come to be known; or if, under § 2499 of the Revised Statutes, they bore a similitude, either in material, quality, or the use to which they might be applied, to what were known as aniline dyes at the time the Revised Statutes were enacted, in 1874.

THE case is stated in the opinion.

*Mr. Benjamin F. Thurston* and *Mr. Livingston Gifford* for plaintiffs in error.

*Mr. Solicitor General* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law, brought in the Circuit Court of the United States for the Southern District of New York, by

Wilhelm Pickhardt and Adolf Kuttroff against Edwin A.
Merritt, collector of the port of New York, to recover duties
paid under protest on importations into that port from Ham-
burg, the entries having been made at the custom-house in
January and February, 1879. There were proper protests and
appeals to the Secretary of the Treasury, and decisions by
that officer. The goods were dyes or colors called naphthyla-
mine red, orange II, orange IV and resorcine red J. At the
trial, before Judge Wheeler and a jury, there was a verdict
for the defendant, and a judgment in his favor for costs, to
review which the plaintiffs have brought a writ of error.

The collector assessed a duty upon the articles in question of
fifty cents per pound and thirty-five per cent ad valorem, under
that provision of schedule M of section 2504 of the Revised Stat-
utes, 2d ed. p. 479, which reads as follows : " Paints and dyes —
aniline dyes and colors, by whatever name known : fifty cents
per pound, and thirty-five per centum ad valorem." The plain-
tiffs claimed, in their protest, that the articles were not aniline
dyes, and were liable to a duty of only twenty per cent ad
valorem, under section 2516 of the Revised Statutes, which
provides that " there shall be levied, collected and paid on the
importation of all raw or unmanufactured articles, not herein
enumerated or provided for, a duty of ten per centum ad va-
lorem ; and on all articles manufactured in whole or in part,
not herein enumerated or provided for, a duty of twenty per
centum ad valorem."

The course of legislation on the subject of duties on aniline
dyes has been as follows : By section 11 of the act of June 30,
1864, c. 171, 13 Stat. 212, the following duty was imposed :
" On aniline dyes, one dollar per pound and thirty-five per
centum ad valorem." By section 21 of the act of July 14,
1870, c. 255, 16 Stat. 264, the following duty was imposed :
" On aniline dyes and colors, by whatever name known, fifty
cents per pound, and thirty-five per centum ad valorem ;" and
by section 22 of the same act, p. 266, picric acid, which appears
to be not chemically an aniline dye, but a phenol dye, though
obtained from coal-tar, was made free of duty. The provision
of the act of 1870, in regard to aniline dyes and colors, was

carried into the Revised Statutes, enacted in 1874, as was also the provision in regard to picric acid.

The question sought to be raised by the plaintiffs in the present case could not arise under the Revised Statutes as amended by the act of March 3, 1883, c. 121, because, under title 33, § 2502, schedule A, as enacted by the act of March 3, 1883, 22 Stat. 493, the following duty is imposed: "All coal-tar colors or dyes, by whatever name known, and not specially enumerated or provided for in this act, thirty-five per centum ad valorem;" and picric acid was not included by name in the list of articles made free of duty by section 2503 as enacted by the act of March 3, 1883. The articles in question, which, it is claimed, were not aniline dyes or colors, are admitted to be "coal-tar colors or dyes."

The plaintiffs claimed on the trial, and claim here, that the words "aniline dyes and colors, by whatever name known," are words of description, and not words used in a general commercial sense. They therefore introduced a good deal of evidence for the purpose of showing that the articles in question were, physically and chemically, not aniline dyes or colors, though derived from coal-tar. It was shown that none of those articles were known in commerce at the time the Revised Statutes were enacted, resorcine red J having been known first in 1875, orange II and IV in 1877, and naphthylamine red in 1878. On the other hand, the defendant introduced testimony for the purpose of showing that the articles in question were known in trade, when imported, as "aniline dyes," and that in 1874 the term "aniline dyes" had been applied in trade to all dyes derived from coal-tar, or artificial dyes.

The testimony on the part of the plaintiffs tended to show that the articles in question were not chemically aniline colors; that naphthylamine red and orange II and IV were azo colors; that resorcine red J was an eosine color; that picric acid was a phenol color; that aniline colors had high tinctorial power, as compared with natural colors, while the tinctorial power of azo colors was no higher than that of natural colors; that aniline colors attached themselves to fabrics without manipulation, easily and directly, while azo colors attached

themselves with more difficulty, being assisted by mordants; that aniline colors were wanting in fastness, while azo colors were relatively fast; that aniline colors were generally on the blue shades, either blues or violets, or reds which contained blue or green, while azo colors had exactly the shades that aniline colors lacked, — yellows, orange and yellowish reds; that aniline colors were not fast to acids or alkalies, while azo colors were relatively fast to both acids and alkalies, and were sometimes even brightened or cleared by acids and alkalies; that aniline colors combined readily with albumen, which was largely used as a mordant and in photography, while azo colors did not combine with albumen; and that aniline colors were not acid, unless sulphonated, while azo colors were always acid.   In regard to resorcine red J, the plaintiffs gave evidence tending to show that an aniline color could be used as a dye, while resorcine red could not be used generally as a dye; that an aniline color could not be used generally or efficiently for paints, while resorcine red was generally used as a pigment for paints; and that the color of an aniline dye was a crimson, running up to violet or bluish red, while the color of resorcine red was scarlet or yellowish red.

The plaintiffs insist that the court erred at the trial in admitting evidence to show what the importations in question were called in trade at the time of the trial in 1884, which was ten years after the Revised Statutes were enacted, and five years after the entries took place; that it also erred in admitting evidence to show the signification of the words "aniline dyes and colors," as a commercial term in contradistinction to a descriptive term; and that it erred in refusing to charge the jury, as requested by the plaintiffs, as follows: "That the term aniline dyes and colors, by whatever name known, is not used in a general commercial sense, but as a descriptive term, and primarily includes only such dyes as are in fact aniline by their constitution;" and also: "That, in determining the question at issue, to instruct the jury to disregard all the testimony of the defendant as to the general name under which the articles in question were bought and sold."

They complain that the court erred in charging the jury that, if any of the articles in question would be, according to the understanding of commercial men, dealers in the articles and importers of them, included in the class of articles known as aniline dyes, by whatever name they had come to be known at the time in question, they were subject to the duty imposed on aniline dyes; that Congress used the term "aniline dyes" as applied to a class of articles which, in June, 1874, had acquired that name by reputation and use among dealers in and importers of such articles; and that the statute was made for the future.

They also complain that the court refused to charge the jury, as requested by the plaintiffs, as follows: "That it is immaterial how the articles in question were regarded in trade, and that the plaintiffs are entitled to a verdict if they are satisfied, upon a fair preponderance of testimony, that the dyes in question are a new and different dye from the aniline dyes known in 1874, and are not in fact aniline dyes, unless the jury should find similitude under the statute." They also complain that the court refused to charge the jury, as requested by the plaintiffs, as follows: "If the jury find that the plaintiffs' goods were not known in commerce until since June, 1874, the plaintiffs are entitled to recover, unless the jury find they bear the statutory similitude to the aniline dyes and colors known in 1874." In regard to each of these last two requests, the court declined to charge otherwise than as it had already charged.

They further complain that the court erred in refusing to charge, as requested by the plaintiffs, that, if the jury should find, upon a fair preponderance of testimony, that the articles in question "were used as a substitute and in place of cochineal, and not as a substitute for any aniline dye known at the time of their introduction, the plaintiffs, on that branch of the case, are entitled to a verdict." In regard to that request, the court said that the general instruction to the jury on the subject was sufficient.

We think that the objections to evidence before recited, and the objections before mentioned to particular parts of the

charge of the court, and to the refusals of the court to charge, and to its refusal to charge otherwise than as it had charged, are untenable.

The court instructed the jury that if the four articles in question, according to the understanding of commercial men, dealers in and importers of them, would, when imported, " be included in the class of articles known as aniline dyes, by whatever name they had come to be known," they were subject to duty as aniline dyes, and the defendant was entitled to a verdict. We see no objection to this instruction. It was in accordance with the established rule that, in interpreting customs statutes, commercial terms are to be construed according to the commercial understanding in regard to them. Nor is this rule inapplicable to this case because the articles in question were unknown in 1874, when the statute was enacted. As the court said to the jury, the law was made for the future; and the term " aniline dyes and colors, by whatever name known," included articles which should be commercially known, whenever afterwards imported, as "aniline dyes and colors." In *Newman* v. *Arthur*, 109 U. S. 132, it was held that the fact that, at the date of an act imposing duties, goods of a certain kind had not been manufactured, does not withdraw them from the class to which they belong, when the language of the statute clearly and fairly includes them. But it is sufficient if it so includes them according to commercial understanding.

The bill of exceptions states as follows: " In the course of the trial a large amount of testimony was introduced, on behalf of both parties, as to the similitude or resemblance, under Revised Statutes, section 2499, of the dyes and colors of the plaintiffs' importations and various dyes and colors known in trade of this country, and by chemists from 1869 to time of trial, as aniline dyes and colors, it being contended upon the part of the defendant that the importations of the plaintiffs, if not specified under and covered by the term aniline dyes, yet that they were chargeable as aniline dyes by similitude."

Section 2499, thus referred to, reads as follows: " There shall be levied, collected, and paid, on each and every non-

enumerated article which bears a similitude, either in material, quality, texture, or the use to which it may be applied, to any article enumerated in this title as chargeable with duty, the same rate of duty which is levied and charged on the enumerated article which it most resembles in any of the particulars before mentioned; and if any non-enumerated article equally resembles two or more enumerated articles, on which different rates of duty are chargeable, there shall be levied, collected, and paid, on such non-enumerated article, the same rate of duty as is chargeable on the article which it resembles paying the highest duty; and on all articles manufactured from two or more materials, the duty shall be assessed at the highest rates at which any of its component parts may be chargeable."

On the question of similitude the court instructed the jury that if the articles in question did not fall within the class of articles known as "aniline dyes," or either of them did not, the jury were then to proceed to the consideration of the question arising under section 2499 of the Revised Statutes, as to similitude; that, if the four articles did not fall within the class of "aniline dyes," then the question would be whether any one of them bore a similitude, either in "material, quality, texture, or the use to which it may be applied," to what were known as aniline dyes at the time the Revised Statutes were enacted; that, if it did, it was dutiable at the same rate as aniline dyes were; that the word "texture" did not apply to the subject; that, if any one of the articles bore a similitude or resemblance, in material or quality, to what were known as aniline dyes in 1874, it was dutiable at the same rate as an aniline dye; that if either of them bore a similitude in the use to which it might be applied, to aniline dyes known and in use in 1874, it was dutiable at the same rate as an aniline dye; that the mere application to the dyeing of fabrics would not create the similitude, but that if there was a similitude in the mode of use, a similitude in the same kind of dyeing, producing the same colors in substantially the same way, so as to take the place of aniline dyes in use, there would be a similitude in use; that if all the articles were neither aniline dyes nor bore

such similitude the plaintiffs were entitled to a verdict for the full amount they claim; that, if any less than all of them were neither aniline dyes nor bore such similitude, the plaintiffs were entitled to a verdict as to those, for the amount of duties charged which ought not to have been charged; that the question was whether the articles fell within the description of "aniline dyes or colors, by whatever name known," as commercially known, or bore a similitude to articles which fell within that description, as they were known in 1874; that the jury were not to consider "aniline dyes" as a term synonymous with "coal-tar dyes;" and that they were to look at the term "aniline dyes" according to its commercial usage in 1874.

The plaintiffs excepted to that part of the charge in regard to similitude which had reference to the expression "similitude in material," and to that part which related to "similitude in the same kind of dyeing," and also requested the court to charge the jury, "in respect to similitude of quality," that the mere quality of producing color, or dyeing, was not a sufficient similitude to warrant the jury in finding a verdict for the defendant by reason of similitude. In response to this request, the court said that it had already instructed the jury that the mere fact that the article would color was not a similitude. The plaintiffs also excepted to the charge of the court as to similitude in use.

We are of opinion that the charge on the subject of similitude submitted the question properly to the jury; and that it was not error to refuse the request to charge, that, if the jury should find that any one of the articles was used as a substitute and in place of cochineal, and not as a substitute for any aniline dye known at the time of its introduction, the plaintiffs, as to that branch of the case, were entitled to a verdict.

Other questions are raised in the bill of exceptions which we do not deem it necessary to notice particularly. We see no error in the record.

*Judgment affirmed.*