WM. J. MATHESON & CO., Limited, v. UNITED STATES.

(Circuit Court, S. D. New York. March 23, 1896.)

No. 1,201.

1. CUSTOMS DUTIES—CLASSIFICATION.

An article not commercially known in this country at the time of the passage of a tariff law, but subsequently imported, and which in fact comes within the proper definition of a similar article then known and provided for in the act, and which is so designated commercially, is entitled to be classified as such.

2. SAME—ALIZARINE BLACK.

The article imported since 1891, and commercially known as "alizarine black," but more particularly designated as "alizarine black 4 B," to distinguish it from the article theretofore and still imported and known as "alizarine black," both being products of coal tar and dyes having similar properties, but somewhat different in chemical composition, is properly classified as a dye commercially known as "alizarine black," under paragraph 478 of the free list in the tariff law of 1890, and not under paragraph 18, as a coal-tar color or dye not specially provided for.

Appeal by the importers from a decision of the board of general appraisers which sustained the action of the collector in assessing duty upon the merchandise in question.

Albert Comstock, for importers.

J. T. Van Rensselaer, Asst. U. S. Atty.

TOWNSEND, District Judge. The merchandise in question is a black dyestuff. It was classified for duty, under paragraph 18 of the act of October 1, 1890, as a coal-tar color or dye, by whatever name known, not specially provided for. The importer protested, claiming that it was specifically included under paragraph 478 of the free list, which is as follows: "478. Alizarine, natural or artificial, and dyes commercially known as alizarine yellow, alizarine orange, alizarine green, alizarine blue, alizarine brown, alizarine black." The board of general appraisers affirmed the classification of the collector, and the importer appeals to this court.

The article in question is a color and a dye. True, alizarine was originally a vegetable product derived from madder. Technically, there is no such thing as alizarine black, because the true alizarine does not dye black; but the term "alizarine" is applied generally to certain coal-tar dyes which exhibit certain marked characteristics similar to those belonging to vegetable alizarine. Prior to the date of the passage of said act there was a coal-tar dye commercially known as "alizarine black," which was chemically a naphthazarine black, and which was protected by a patent. The merchandise in the present case was not commercially known in the United States prior to 1891. It is a coal-tar dye, which is chemically naphthyl black, and also is protected by a patent.

The questions at issue will be best understood by the following statement: The dye which was commercially known as "alizarine black" prior to the passage of said act, hereafter referred to as "alizarine black S C," and the alizarine black in question, hereafter to be known as "alizarine black 4 B," differ from each other in several respects. The alizarine black 4 B is chemically naphthylamine black 4 B, so that both designations apply to the article here in question. The importers have on certain special occasions, to be hereafter considered, sold their alizarine black 4 B under the name of "naphthylamine black 4 B." It is immaterial that the article in question is not chemically alizarine, because there is no such alizarine derived from coal tar, as already stated. The question is whether the article is "commercially known as alizarine black," under paragraph 478 of the free list. The importer admits that, if the article had been imported and known under another name prior to the passage of said act, the provisions thereof would not apply thereto. But he claims that under the decisions in Smith v. Field, 105 U. S. 52, Newman v. Arthur, 109 U. S. 132, 3 Sup. Ct. 88, and Pickhardt v. Merritt, 132 U. S. 252, 10 Sup. Ct. 80, if said article is a new product coming into existence after the passage of said act, and is in fact alizarine black, and is commercially known as such. it is free of duty, under said law. The counsel for the United States denies these claims. In support of the proposition that it is in fact alizarine black, the importer shows that it responds to certain tests which are recognized as the usual and characteristic tests in determining the question of membership in the family of alizarines. These characteristics are the application to wool mordanted with chrome and tartar mordants, and fastness of color in milling and fulling, and on exposure to sun and air. In these respects it is also like alizarine black S C. The counsel for the United States does not deny these facts. He admits that the term "alizarine" is applied to a class of colors which possess certain marked characteristics. But he relies upon proof that the alizarine black 4 B of the importer differs in certain respects from said alizarine black S C. Thus, it is claimed that alizarine black 4 B is an acid black, while alizarine black S C is not. In fact, acid is used for dyeing with both alizarine blacks; but in the case of alizarine black 4 B the acid is used with the dye in dyeing the wool, while in alizarine black S C the acid is used prior to the application of the dye, and is afterwards washed out, before the dye is applied to the wool. It appears, however, that in the above experiments acetic acid was used with alizarine black 4 B, while oxalic acid was used with alizarine black S C. It further appears that wool dyed with the two alizarines operates differently when a discharging process is applied to it; that is, by the action of certain chemicals one color is discharged or washed out, while the other remains fast. As to the first of these alleged differences, the counsel for the importer shows that different processes have been applied to the two dyes for accomplishing these different results, and that it does not appear that the same process applied to each would not have produced the same results. As to each of said differences, he claims that even though the same tests were applied, and produced different results, as claimed, yet they are not the ordi-

nary or usual tests to which such dyes are subjected in practice, and the results are therefore immaterial; and, further, that the question herein is not answered by a comparison of the differences between alizarine black 4 B and alizarine black S C, but by a determination as to whether the article in question corresponds with the generally recognized tests applicable to the whole family of alizarines, and that the right of alizarine black S C, as well as that of alizarine black 4 B, to free entry, depends upon its similarity to, and consequent membership in, the family of alizarines, as ascertained by said tests. I am satisfied upon the whole evidence that the article in question does in fact belong to the family of alizarines, and is entitled to be known as "alizarine black."

The further question is presented as to whether this article is commercially known as "alizarine black." As already stated, it was first imported in 1891, and was designated by the importers as "alizarine black." Several witnesses testify that it is thus commercially known. But counsel for the United States shows that in the importers' catalogue of coal-tar colors it is advertised both as "naphthylamine black 4 B" and as "alizarine black 4 B." He further shows that on certain occasions purchasers have obtained from the importers' cans of said color on which were the words "naphthylamine black 4 B." And he therefore claims that the article in question has not received any such general, universal commercial designation as entitles it to be considered as commercially known as "alizarine black." Counsel for the importer, however, shows that alizarine black S C and naphthylamine black 4 B are each imported by a single house, and that the importer who therefore sells the whole product of alizarine black 4 B generally sells it under said name; that the single instances in which it was otherwise sold were either where the sales were made upon request by the purchaser that the article should be marked "naphthylamine black 4 B," or where there was some misunderstanding as to its name. It further appears that when said article is sold with a printed label it is "alizarine black 4 B," and where it is sold as naphthylamine black 4 B said name is written on the label. Counsel for the importer further contends that, inasmuch as the article is chemically naphthylamine black 4 B, the mere fact that this name, which correctly describes its general chemical composition, has been used under the circumstances above stated, does not affect the evidence that it is commercially known and generally sold as "alizarine black 4 B." I think this contention is sound. In any event, I think the importer has brought this dye within the provision for "dyes * * * commercially known as alizarine black." Finally counsel for the United States claims that a commercial designation must be one existing and recognized in trade and commerce at and prior to the date of the tariff act in which such designation occurred. That this rule is well settled appears from the cases cited. But none of those decisions cover the case of a new article practically identical with that previously commercially known by the same name. In Dennison Mfg. Co. v. U. S., 18 C. C. A. 543, 72 Fed. 258, the court of appeals found that the article in question had in fact been imported prior to the passage of the act of October 1, 1890. It was commer-

cially known under various names, and differed in quality and use from the tissue paper of trade and commerce, and was found by the court to be "an article advanced beyond the condition of tissue paper, into something else." I think the case falls within Pickhardt v. Merritt, 132 U. S. 252, 257, 10 Sup. Ct. 82, where the court says as to aniline dyes, which were unknown when the statute was enacted:

"As the court said to the jury, the law was made for the future; and the term 'aniline dyes and colors by whatever name known' included articles which should be commercially known, whenever afterwards imported, as 'aniline dyes and colors.'"

I fail to find any modification in the application of this rule to articles first discovered, imported, and known subsequent to the passage of such acts, and which are commercially known as, and in fact belong to, the class of exempted articles. The decision of the board of general appraisers is reversed.