UNITED STATES *v.* GODILLOT & CO. (No. 664).[1]

NIGHT LIGHTS NOT TAPERS NOR TAPERS BY SIMILITUDE.

In construction and in use "night lights" partake more of the characteristic features of oil lamps than of tapers, and neither in material nor in the use to which they are commonly applied are they similar to tapers. They are dutiable as unenumerated manufactured articles under paragraph 480, tariff act of 1909.

United States Court of Customs Appeals, April 1, 1912.

APPEAL from Board of United States General Appraisers, Abstract 25655 (T. D. 31624).

[Affirmed.]

*William L. Wemple,* Assistant Attorney General (*William K. Payne,* Deputy Assistant Attorney General, on the brief), for the United States.

*Comstock & Washburn (Albert H. Washburn* and *J. Stuart Tompkins* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Certain merchandise designed to furnish a dim light in sleeping rooms during the hours of slumber and known to the trade as "night lights" was classified by the collector of customs at the port of New York as "tapers" and assessed for duty at 35 per cent ad valorem under the provisions of paragraph 436 of the tariff act of 1909, which said paragraph reads as follows, to wit:

436. Matches, friction or lucifer, of all descriptions, per gross of one hundred and forty-four boxes, containing not more than one hundred matches per box, six cents per gross; when imported otherwise than in boxes containing not more than one hundred matches each, three-fourths of one cent per one thousand matches; wax and fancy matches and tapers, thirty-five per centum ad valorem.

The importing company protested that the goods were not tapers, and among other grounds of objection to the classification the claim was set up that they were nonenumerated manufactured articles dutiable at 20 per cent ad valorem under the provisions of paragraph 480, which reads as follows:

480. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this section, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of twenty per centum ad valorem.

<hr>

[1] Reported in T. D. 32382 (22 Treas. Dec., 569).

The Board of General Appraisers sustained the protest, and the Government appealed.

In aid of the appeal it is urged, that the night lights are dutiable as tapers, either directly or by similitude, and that therefore the collector's assessment should be sustained and the Board's decision reversed.

From the samples in the case and the uncontradicted evidence furnished by the record it appears that the night lights are composed in chief value of stearin and that they are made by pouring the stearin into cylindrical cups around a bamboo wick firmly fastened to the bottom of the vessel. The "lights" are about 2 inches high, and when finished have the form of a very short cylinder surmounted by a conical cap of stearin, which facilitates the ignition of the wick. The cup, which serves as a reservoir for the melted stearin when the wick is lighted, is made of paper pasted on a circular base of plaster of Paris 1⅝ inches in diameter.

In our opinion, articles such as these are not tapers, either within the original meaning of that term or as the word is now more generally understood. The taper may have antedated the candle and derived its name from the Celtic for torch, or the name may have been suggested by a special form of candle the diameter of which gradually diminished from base to top. But whatever may be its origin the designation never at best applied to any candles other than those which were small and slender and designed to furnish a feeble light for a brief period. The slender tapering candles or tapers of olden times have been largely replaced in these modern days by the molded or rolled candle, and therefore, in this country at least, have almost fallen into the disuse of the tallow dip. Indeed, that they are preserved at all to the common knowledge seems to be due largely to the fact that their use is required and continued in certain religious ceremonies. In consequence "taper," as the term is now generally employed, does not signify a candle at all, but rather an article in the nature of what was formerly called a "spill"—that is to say, a slender strip of inflammable material employed to light lamps or candles.

We think that the night lights under discussion, both in composition and in the results accomplished by their use, are something more than tapers or taper candles. They are intended and designed to furnish light, not for a brief time, but, comparatively speaking, for a long-continued period. They are not fitted to be carried from place to place as are tapers or taper candles. Finally, they could not be substituted for tapers nor even for taper candles, the use of which seems to be regulated by religious custom and the ritual of religious ceremonies.

In use, in construction, and in results accomplished night lights partake more of the characteristic features of oil lamps, and neither in materials nor the use to which they are applied are they similar to tapers or taper candles. That night lights and tapers are designed to be lighted and when lighted give a light is not enough to constitute similitude of use. To constitute similitude of use the results of the use must be substantially the same and achieved substantially in the same way. Pickhardt v. Merritt (132 U. S., 252, 258). It seems to us that there is no more reason for saying that a night light is similar to the modern taper or to the taper candle than there is for saying that a modern candle is similar to a match or that the candle itself is similar to a kerosene lamp. Tapers, matches, candles, taper candles, kerosene lamps, and electric bulbs all furnish light, some for brief, some for longer periods; but that fact, standing by itself, can hardly be said to rank them as articles of similar use.

The decision of the Board of General Appraisers is *affirmed*.