### GENERAL ATLAS CARBON CO. v. SHEP-PARD, Comptroller of Public Accounts, et al.

No. 39 Civ.

District Court, W. D. Texas, Austin Division.

March 4, 1940.

52

Morgan, Culton, Morgan & Britain, of Amarillo, Tex., for plaintiff.

Gerald C. Mann, Atty. Gen. of Texas, and Glenn R. Lewis and Hirschie J. Johnson, Assts. to Atty. Gen. of Texas, all of Austin, Tex., for defendants.

McMILLAN, District Judge.

General Atlas Carbon Company, a Delaware corporation, filed this suit against Geo. H. Sheppard, Comptroller of Public Accounts of the State of Texas, Charley Lockhart, State Treasurer, and Gerald C. Mann, Attorney General of Texas, to recover the sum of $47,570.51 theretofore paid by plaintiff to the Comptroller under protest and deposited in the Suspense Account of the State of Texas. Of that amount, $40,-647.37 had been demanded by the Comptroller as occupation taxes claimed to be due the State under the provisions of Acts 1936, 44th Leg., 3d C.S., p. 2040, ch. 495, Art. 4, Sec. 7, Art. 7047, Sec. 45, Vernon's Texas Civil Statutes, levying an occupation tax upon the producers of carbon black. The remaining $6,923.14 represented penalties and interest assessed by reason of the late payment of the taxes alleged to have accrued from November, 1936, to August 31, 1939.

The pleadings and the evidence show that plaintiff has a plant at Pampa, in Gray County, Texas, where it manufactures certain products which it markets under the trade names of Gastex, Low Modulus Black, and CS-3, the first of which is produced in far the greatest volume. The evidence shows that the differences between them are not such as need be noticed in this opinion. If Gastex is carbon black, so are the other two.

Briefly, the evidence shows that Gastex is obtained by thermal decomposition of natural gas. It is formed by incomplete combustion of the gases in a furnace and is gathered by electrical precipitation. Under this process from nine to eleven pounds of Gastex are obtained from one thousand cubic feet of natural gas, as against one to perhaps two pounds of carbon black which is obtained by impingement methods from a like amount of gas.

In the Act levying the tax we find the following provision: "(f) The term 'carbon black' as herein used includes all black pigment produced in whole or in part from natural gas, casinghead gas or residue gas by the impinging of a flame upon a channel disk or plate, and the tax herein imposed shall reach all products produced in such manner. Acts 1936, 44th Leg., 3rd C. S., p. 2040, ch. 495, Art. 4, § 7."

There is no dispute between the parties as to amounts and figures. The only issue is whether plaintiff's product is carbon black within the taxing statute. If the tax was levied only on commodities produced in the certain way mentioned in the statute, then, of course, the plaintiff here would be clearly exempt, for the reason that the evidence shows without contradiction that it does not produce its pigment by impinging the natural gas flame either on channels or cylinders or disks.

When this statute was first enacted, the plaintiff here apparently convinced the Comptroller and the Attorney General and the Railroad Commission that it had no application to its product. It would appear that these various state officers were so convinced upon the theory that the tax levied was one upon the manner of production that they concluded plaintiff was not liable for the tax, inasmuch as it was not producing its black in any manner mentioned in the statute.

However, the Court of Civil Appeals for the Third Supreme Judicial District of Texas in Peerless Carbon Black Co. v. Sheppard et al., 113 S.W.2d 996, decided that the portion of the statute providing that the term "carbon black" should include all black pigment produced by the impinging of a flame upon certain objects is an enlargement of the term and not a

limitation upon it. Commodities produced in other ways might still be carbon black. The Supreme Court has denied a writ of error. It is a construction of their own statute by the State Courts, and this Court, of course, is obliged to follow it. Furthermore, the decision seems to the Court here now to be correct, and it is not challenged by counsel in this case.

Accordingly, it is necessary, in order to determine whether the plaintiff here falls within the purview of the statute, to determine what the range and compass of the term "carbon black" is. In passing upon this difficult question the Court might ask with the Bard of Avon,

"What's in a name? that which we call a rose,

By any other name would smell as sweet."

However, the matter of nomenclature here is not so simple as all of that.

▪ The legislative body in passing its enactments and particularly its tax laws, has to use descriptive terms, and when it uses these descriptive words or terms, then all commodities which fall within them reasonably must be presumed to have been intended. Pickhardt v. Merritt, 132 U.S. 252, 10 S.Ct. 80, 33 L.Ed. 353. The Court should not construe tax laws in such a way as to balk the sovereign authority in collecting its taxes. Eppstein v. State, 105 Tex. 35, 143 S.W. 144; Scottish U. & N. Ins. Co. v. Bowland, 196 U.S. 611, 25 S.Ct. 345, 49 L.Ed. 619. On the other hand, tax laws are not to be liberally construed in such a way as to include such matters for taxation which are not clearly within the law. The tax statutes must be strictly construed, in that it must clearly appear that the matter attempted to be taxed falls within the terminology of the tax statute. Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211; State v. San Patricio Canning Co. et al., Tex.Civ.App., 17 S.W.2d 160.

The plaintiff urges that the Court place upon the term "carbon black" a very narrow and restricted meaning. It contends with some force that the trade and experts generally have attached to the term "carbon black" a certain primary meaning which limits it practically to pigments that are produced by the impingement method, and according to one of its experts, it must have certain qualities that manifest themselves when applied to rubber. In fact, according to the testimony of that expert, one of the sine qua nons for a classification of carbon black is that the commodity reacts in a certain way in regard to rubber. He did not contend it is not used for other purposes, but according to his evidence it has to manifest certain qualities in connection with rubber; otherwise, it is not carbon black.

▪ The term "carbon black" may have different significances to different lines of industry. The tire manufacturer, in ordering carbon black, might mean that particular variety of it that could be used in the making of tire treads. It might mean another thing to the maker of inks, another thing to the maker of ordinary rubber goods, and still another thing to the manufacturers that use it for other and different purposes. Accordingly, it does not appear that the restricted definition that one industry would give to it ought to apply to the exclusion of the others, unless it is perfectly apparent and clear that no other meaning could be given to it under the facts. The statute itself contains nothing to suggest that the commodity which the Legislature had in mind was limited to the blacks used in the manufacture of tire treads or any other particular line of goods. This is particularly true in light of the interpretation given the statute in the Peerless case.

An analysis of the plaintiff's product here shows that chemically it differs to a great extent from other blacks which are admittedly carbon blacks. For instance, its principal constituent is carbon, carbon constituting over ninety-nine per cent of its make-up. It has only a trace of oxygen and hydrogen, no nitrogen, and no sulphur. Blacks admittedly carbon black run approximately ninety-three per cent carbon, and have between six and seven per cent of these other constituent elements. In general appearance the two pigments are very much the same. They are both black, and they are both powder, though the evidence shows that that produced by the plaintiff is coarser to the eye under the microscope.

When compounded with rubber and subjected to heat treatment, carbon black imparts certain properties, such as tensile strength, hardness, resistance to wear and tear. Some variation is found in the characteristics produced by the use of different grades of channel blacks. Plaintiff's product also gives tensile strength, hardness, resistance to wear and tear, as well as other properties imparted by the channel blacks, although differing in degree, in

some respects rather sharply. It is apparent from the evidence that the combination of properties given to rubber by the mixture in it of channel blacks is recognized by the automobile industry as being a more suitable one in tire treads than is obtained from Gastex. In other words tire treads in which channel blacks are used last longer and better. Hence, so far, plaintiff has not been able to market much, if any, of its product for that use. However, in the manufacture of some rubber commodities plaintiff's black seems to offer the properties desired, apparently having the advantage in some fields. Thus the difference seems rather to be one of grade.

Many illustrations might be and have been given by counsel for both sides as to the range which a generic term such as carbon black should take. For instance, the Legislature has levied a tax upon crude oil. It is manifest immediately there are many different kinds of crude oil There are variations both as to its viscosity and its specific gravity, and some of it has an asphalt base and other has a paraffin base. The uses to which it may be applied are determined by those things. Crude oil which is useful for one purpose is not available for use as another. However, no one would contend that generically they do not constitute crude oil, whether they have a paraffin base or asphalt base, or regardless of what their viscosity or specific gravity is. Examples of that kind might be multiplied and have been multiplied by counsel in argument. They are helpful, of course, but only in a limited way.

In the last analysis, the Court is seeking the intention of the Legislature in levying this tax, and still that intention must be manifested by the words used in the statute. It would not make any difference what the intention of the Legislature was if they did not say the thing. The question of their intention becomes important only when there is some ambiguity or doubt as to what it was, in which event we may look to debates upon the floor or statements made in the Committee or recitals in the Act itself. It does not make any difference if the Legislature intended to cover plaintiff's commodity here by the term "carbon black", if they did not use apt words to do so. Accordingly, we are thrown back again on the question as to what is generally meant and understood by the use of the term "carbon black."

Now, the plaintiff here in the conduct of its business has not exercised that meticulous care in the name of its product that it now calls upon the Court to exercise. The patents under which it claims and holds, and to a certain extent under which it manufactures its product, refer to it again and again as carbon black. By advertisements too numerous to advert to here, it has referred to its product not only as "Gastex Carbon Black" but simply as "carbon black," and it has continued to do so over the course of years, and was doing so at the time the Legislature passed the statute in question. Letters have been written by parties in authority in the corporation referring to its product as "carbon black." Applications have been made to the Railroad Commission for authority to build its plant and for extensions of time with respect thereto, referring to it as a carbon black plant. Tax renditions have been made so referring to its product. Upon its ledger sheets stock accounts are so carried. Franchise tax reports have been made referring to it as carbon black. So it would appear that the plaintiff itself has not discriminated at all in the use of the term, and has used same when it suited its convenience. Generally at a time when it was not considering apparently the question of a tax, it constantly referred to its product as carbon black. Evidence of that variety is, of course, not conclusive, but it is persuasive. If it were clearly shown it were not carbon black within the meaning of that term, the fact that it so referred to it would not make it carbon black, but when we are searching for the general meaning of a word or words, it is, of course, proper to inquire as to how those words are used and what significance has been given to them, and if that comes from the camp of the plaintiff, it is, of course, very cogent.

It may be very logically argued that the constant use of that term carbon black in connection with the plaintiff's product by the plaintiff itself might warrant the assumption on the part of the public generally and the Legislature in dealing with the subject matter that it fell under that broad generic term, and that it would be proper to so describe it.

Excerpts have been offered in evidence here from various reports made by experts and some scientific works on the subject matter, and various trade journals which would indicate that the term carbon

black is amply broad enough to cover these softer blacks which are produced in other manners besides the impingement process. In fact, I am of the opinion that there is ample evidence here, based not only upon the conduct of the plaintiff itself, but upon the statements of the experts and writers on the subject matter generally, to show that the term carbon black is broad enough to encompass and include this softer black, despite the fact that it was not produced by the impingement method and despite the fact that it does not have a number of the characteristics or qualities of the blacks that are produced by the projection of flames against metal surfaces. The court holds that plaintiff's product falls within the taxing statute.

Accordingly, it would follow from what I have said that the plaintiff's application for judgment against the Comptroller and the Treasurer and the Attorney General awarding to it this tax paid and now held in the suspense fund should be denied. The defendants in open court have expressed a willingness, under the circumstances, for the record to show that they will not contest a recovery back of the penalties, and the same will therefore be returned. Judgment will be drawn accordingly.