(C. D. 1240)

ALLIED FOOD CORPORATION OF AMERICA *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 4, 1950)

*Burton G. Henson* for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Joseph E. Weil, Richard E. FitzGibbon*, and *Michael Stramiello, Jr.*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: This case involves an importation from Cuba of what is described on the invoice as soft jelly, guava, packed in 500 crates containing 2 cans each. It was assessed with duty at the rate of 28 cents per gallon as fruit sirup, not specially provided for, containing less than one-half of 1 per centum of alcohol under the provisions of paragraph 806 (a) of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, T. D. 49753, and the Cuban Trade Agreement, T. D. 47232. It is claimed on behalf of the importer to be properly dutiable as a jelly at 14 per centum ad valorem under

paragraph 751 of the same law, as modified by the Cuban Trade Agreement, *supra*, either directly or by similitude, by virtue of paragraph 1559 of the said tariff act. Alternatively, plaintiff claims the commodity to be dutiable as a nonenumerated manufactured article under paragraph 1558 of said act at the rate of 20 per centum ad valorem, less the 20 per centum reduction granted to products of the soil or industry of Cuba (T. D. 47232). The claim that the merchandise is dutiable directly under said paragraph 751 was not pressed and appears to have been waived.

Plaintiff and defendant each called one witness. From the evidence it is apparent that the imported product is a commodity produced from guava fruit, which in its condition as imported will flow and is not of the consistency of jelly, but is used to make guava jelly by the addition of citric acid and heating with water. Counsel for the plaintiff conceded that it is a jelly that has not yet jelled and that it would not jell unless it is exposed to an evaporating process or further processed by heating and the addition of acid water.

The witness produced on behalf of the plaintiff testified that the only use for this product is for the manufacture of jelly; that it was originally manufactured to be shipped in a large container, in such quantities as and wherever needed, because it could be kept more easily and shipped and divided in a quicker and more efficient manner in this form than could ordinary fully jelled jelly.

The chemical analysis in evidence, together with the testimony, shows that this product consisted of approximately 45 per centum guava juice and approximately 55 per centum sugar.

The witness produced on behalf of the Government, a food broker at the port of entry with 30 years' experience in buying, selling, and importing guava jelly, testified that he had never bought, sold, or imported merchandise similar to the imported product; that in its imported condition it is not, in his opinion, guava jelly nor would it be a good delivery for guava jelly, because it does not have the consistency of jelly and does not jell.

Recourse to dictionary definitions reveals the following. Funk & Wagnalls New Standard Dictionary defines jelly as:

> Any semisolid glutinous substance that will quiver when shaken but will not flow; a stiff, elastic, generally diaphanous substance obtained by solution of gelatinous matter; any soft quivering mass; as, petroleum *jelly*.

Webster's New International Dictionary (2d ed.) defines the term as follows:

> jelly: 1. A molded, semitransparent, easily melted food preparation which has a soft, somewhat elastic, homogeneous consistency, owing to the presence of gelatin, pectin, or a similar substance. * * *
> 2. Any gelatinous substance; anything of the consistency of jelly (in sense 1).

Our appellate court also defined jelly in the case of *Bogle* v. *United States*, 1 Ct. Cust. Appls. 144, T. D. 31188. The question before the court there was whether marmalade and berry jam were jellies or sweetmeats. In deciding against the claim for classification as jellies, the court used the following language:

\* \* \* Marmalade is not a jelly, for the reason that a jelly is a preparation of the juice of fruit, thickened into a soft, stiff, homogeneous consistence, and usually semitransparent \* \* \*.

From the definitions above quoted it is apparent that in determining whether or not a commodity falls within the term "jelly" the question of its consistency is an important factor. However, the claim relied on by plaintiff here is not that this commodity is jelly directly, but that it falls within that classification by reason of the similitude clause in paragraph 1559, *supra*. We quote that paragraph, insofar as pertinent, as follows:

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; \* \* \*.

In discussing the above provision of the act, the court in the case of *Mary G. Ricks* v. *United States*, 33 C. C. P. A. (Customs) 1, C. A. D. 308, at page 6, used the following language:

The similitude provision of the tariff act, in substantially its present form, has found its way into every tariff act for more than 100 years, and on many occasions courts have been called upon to consider its applicability in the classification of merchandise. This court, at various times, has considered the meaning of the term "similar, either in material, quality, texture, or the use to which it may be applied." Probably the fullest expression by this court as to the meaning of this term is to be found in the case of *Pittsburgh Plate Glass Co.* v. *United States*, 2 Ct. Cust. Appls. 389, T. D. 32162, wherein it was held that mats of unwoven hair were dutiable by similitude under the provision for "unwoven felt in part of wool" in paragraph 382 of the tariff act of 1909. The court held that the imported merchandise contained no wool, but that its use controlled its classification under the similitude provision. In discussing the above-quoted phrase, after holding that the material was used solely in connection with plate glass manufacture as were the comparable woolen articles directly provided for under the term "felt in part of wool," the court stated, in substance, that in considering similitude of use the question as to what *effect* similar uses might have when the two articles were compared was important. It quoted from *Pickhardt* v. *Merritt*, 132 U. S. 252, the following:

\* \* \* the mere application to the dyeing of fabrics would not create the similitude, but \* \* \* if there was a similitude in the mode of use, a similitude in the same kind of dyeing, producing the same colors in substantially the same way, so as to take the place of aniline dyes in use, there would be a similitude in use \* \* \*.

It also quoted from *Murphy* v. *Arnson*, 96 U. S. 131, relating to similitude of use, the statement that similitude "plainly refers to its employment, or its effect in

producing results." Also cited were *Patterson* v. *United States*, 166 Fed. 733; *Arthur* v. *Fox*, 108 U. S. 125; and *Rosenstern* v. *United States*, 171 Fed. 71.

It has been so often held as to require no citation of authority here that similitude is a question of fact and is to be proved. The similarity in use between certain things may be so obvious as to require no express proof, and, in considering similitude, proper deductions from proven facts may be indulged.

In the case at bar the commodity in its imported form cannot be used as jelly is used. Therefore, there is no similitude in use. As to its similarity in material, the record shows that it is lacking in an important element which causes jelly to congeal, for in order to become "jelled" either it must be exposed to an evaporating process or further processed by heating and the addition of acid water. As to a similarity in texture, a mere inspection of the product shows that it is a sirupy mass which flows, rather than a semisolid mass. In any event, we think a comparison as to texture in regard to the materials here involved is not practicable. In the case of *Ringk & Co.* v. *United States*, 13 Ct. Cust. Appls. 126, T. D. 40960, at p. 128, the court, in considering the meaning of that term, used the following language:

The derivation and meaning of the word "texture" indicates that it would naturally be more applicable to woven fabrics or textile fibers than to gelatin or cellophane. In this connection see *Pickhardt* v. *Merritt*, 132 U. S. 252 at 258; *Stratton* v. *Komada & Co.*, 148 Fed. 125; *United States* v. *Komada & Co.*, 162 Fed. 465.

Under the rule laid down in the decisions above cited, we find that the commodity here involved does not possess the required statutory particulars of similitude to jelly.

The collector assessed duty at the rate applicable to a fruit sirup. That action carries with it the presumption of correctness. The record is lacking in proof that the commodity in suit is not fruit sirup, but plaintiff asks the court to take judicial notice that there is not in general use as a sirup any guava sirup. It is true that plaintiff's witness stated that there is no "guava sirup" known or used commercially. However, this commodity was not assessed as guava sirup but as a fruit sirup, which is a descriptive term ordinarily embracing sirup of all fruits.

The cases cited by plaintiff's counsel in the brief filed, in which various imported commodities were classified according to the component material of chief value, have no application in the case at bar. Inasmuch as the proof fails to show that the commodity is not a fruit sirup, which is an enumerated article, resort cannot be had to the provision for classification and assessment according to the component material of chief value in paragraph 1559, *supra*, nor to provision for unenumerated articles in paragraph 1558, *supra*.

Upon the record we find that the burden of overcoming the correctness of the collector's action has not been met by the plaintiff. The protest is therefore overruled.

Judgment will be rendered for the defendant.