BEFORE THE SECOND DIVISION, OCTOBER 4, 1960

No. 64627.—Dan Brechner & Co. *v.* United States, protests 58/14506, 58/14862, and 58/16697 (New York).

RAO, Judge: The collector of customs at the port of New York invoked the provisions of paragraph 1559 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, to classify, by similitude to wearing apparel in chief value of cotton, an importation of foam plastic caps. Cotton wearing apparel is provided for in paragraph 919 of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, at the rate of 20 per centum ad valorem, and the collector applied that rate in assessing duty upon said importation.

It is claimed in the three protests herein involved, which have been consolidated for purposes of trial, that said merchandise is properly dutiable at the rate of 10 per centum ad valorem, within the provisions of paragraph 1558 of said act, as modified by the Torquay Protocol to said General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, supplemented by Presidential notification, 86 Treas. Dec. 347, T.D. 52827, for articles manufactured in whole or in part, not specially provided for.

For convenience of reference, the respective tariff provisions are herein set forth as follows:

Paragraph 1559 of the Tariff Act of 1930, as amended, *supra*:

(a) Each and every imported article, not enumerated in this act, which is similar in the use to which it may be applied to any article enumerated in this act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

\*     \*     \*     \*     \*     \*     \*

Paragraph 919, as modified, *supra*:

Clothing and articles of wearing apparel of every description, manufactured wholly or in part, wholly or in chief value of cotton, and not specially provided for:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Other_____ 20% ad val.

Paragraph 1558, as modified, *supra*:

Articles manufactured in whole or in part, not specially provided for (except * * *)_____ 10% ad val.

At the trial of this action, a sample of the imported merchandise was introduced into evidence as plaintiff's exhibit 1. It is in the form and style of a standard cap worn by men, especially for sportswear, except that it is composed of a foam plastic substance.

Testimony concerning the cap was provided by a witness for the plaintiff who, in his capacity as a partner of the firm, authorized the purchase of this article. He stated that it was essentially a "gimmick" item which he thought might be useful for golfers or fishermen, in view of its light weight and the fact that it could absorb and retain water without losing its shape. He described it as suitable "to keep hot-headed golfers cool-headed," since moisture in it would tend to have a cooling effect.

The witness knew of no other article of any other material which could serve the same purpose. He stated that a cotton cap would not hold its shape in the rain, but would subject the wearer to the unpleasantness of having a cap "built" on him.

Because this was essentially a novelty item, it never became an article of general or practical use, and the witness was unable to tell whether it possessed any heat insulating properties. He stated that it was sold "with the thought in mind that the hat can be used to be put in such a fashion where water would be put into the hat, where it would retain and absorb itself into a hat and retain its shape and be used along those lines. Whether or not it was eventually used that way, that I can't answer."

Hats of this type were distributed through jobbers who handle novelties, tricks, and jokes. They would not be sold to merchants in the cotton goods or cotton hat line.

Counsel for plaintiff submits that if the doctrine of similitude governs the classification of the imported merchandise, then cotton caps, embraced within the provision for cotton wearing apparel, are unquestionably the most similar articles provided for in the tariff law. It is contended, however, that there is no legal similarity between the two types of caps for the reason that the results of their use are not the same. The rule of law relied upon is that similitude of use derives from similar results, achieved in substantially the same way, and similarity in methods of use is as important as similarity of end results in the final determination of similitude of use. *United States* v. *Godillot & Co.*, 3 Ct. Cust. Appls. 128, T.D. 32382; *United States* v. *Wecolite Co.*, 45 C.C.P.A. (Customs) 54, C.A.D. 672; *Pickhardt* v. *Merritt*, 132 U.S. 252.

No useful purpose would be served in further exploring the doctrines of the cited cases, since it is clear that the instant record is lacking in proof to substantiate any distinctions in methods of use. While the witness discussed the attributes of the novelty hats here in issue—their capacity of absorbing and retaining water, their ability to keep their shape after moistening, their propensity for keeping the wearer cool, and their light weight—his testimony did not reveal the practical application of these properties in actual performance. In

fact, he did not know whether they eventually fulfilled their expectations or were ever used in any way that might serve to distinguish them from other types of caps worn by golfers and fishermen.

The collector's classification of these hats, by similitude to cotton wearing apparel, which is presumptively correct, rests upon the subordinate presumption that he has found the existence of all necessary facts to sustain his action. *McKesson & Robbins, Inc.* v. *United States*, 27 C.C.P.A. (Customs) 157, C.A.D. 77; *E. I. du Pont de Nemours & Co.* v. *United States*, 27 C.C.P.A. (Customs) 146, C.A.D. 75. And since similarity in the means by which the ultimate purpose is achieved is, under the law as interpreted by the courts, one of such essential facts, it must be assumed that his decision embodies a finding to that effect.

Without expressing any opinion as to whether proof of use in accordance with the stated properties of the instant foam plastic caps would, in any event, negative similitude of use to cotton caps, we are constrained to hold that the evidence in this case is insufficient to overcome the presumptively correct action taken by the collector. All claims in the protests are, therefore, overruled.

Judgment will be entered accordingly.