(C.D. 3181)

F. B. VANDEGRIFT & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 31, 1967)

*Allerton deC. Tompkins* for the plaintiff.

*Edwin L. Weisl, Jr.,* Assistant Attorney General (*James S. O'Kelly* and *Alfred A. Taylor, Jr.,* trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The two above-enumerated protests consolidated for purposes of trial controvert the classification by the customs authorities of certain merchandise for duty purposes. Protest 63/5941 relates to merchandise described on the commercial invoice accompanying entry 8705 as " 'AMICO' Brand Small Size Marker, 3 Pcs. set." Protest 63/5949 covers merchandise described on the commercial invoice accompanying entry 28451 as "Regular Size Black Plastic Container Marker." The fact one shipment consisted of sets of three markers whereas the other shipment was in bulk and the further fact that one consignment was of smaller size markers than the other do not affect the basic question, namely, what is the proper tariff classification for markers.

The markers were classified by virtue of the similitude provisions in paragraph 1559(a) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, 89 Treas. Dec. 242, T.D. 53599, as articles in chief value of aluminum, not specially provided for, in paragraph 397 of said tariff act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and were assessed with duty at the rate of 19 per centum ad valorem.

Plaintiff claims in the alternative under three other provisions of the tariff act, as modified, which provide lower rates of duty, namely—

1. As ink, not specially provided for, in paragraph 43 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, dutiable at 5 per centum ad valorem.

2. If the similitude provision is applicable, by similitude to manufactures of chalk, not specially provided for, in paragraph 20 of said

act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, for which duty at the rate of 12½ per centum ad valorem is provided.

3. As manufactured articles, not specially provided for, in paragraph 1558 of said act, as modified by the Torquay protocol, *supra*, supplemented by Presidential notification, 86 Treas. Dec. 347, T.D. 52827, subject to duty at 10 per centum ad valorem.

The specific language of the various statutory provisions involved is here set forth for ready reference:

Paragraph 1559(a) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, *supra*:

PAR. 1559. (a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any non-enumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

\* \* \* \* \* \* \*

Paragraph 397 of the Tariff Act of 1930, as modified by the sixth protocol, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \* \*

Composed wholly or in chief value or iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\* \* \* \* \* \* \*

Carriages, drays, \* \* \*

\* \* \* \* \* \* \*

Other, composed wholly or in chief value of iron, steel \* \* \*_____ 19% ad val.

Paragraph 43 of the Tariff Act of 1930, as modified by the Torquay protocol, *supra*:

Ink, and ink powders not specially provided for_____ 5% ad val.

Paragraph 20 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*:

Chalk or whiting or Paris white:

\* \* \* \* \* \* \*

Put up in the form of cubes, blocks, sticks, or disks, or otherwise, including tailors', billiard, red, and

manufactures of chalk not specially provided for_____ 12½% ad val.

Paragraph 1558 of the Tariff Act of 1930, as modified by the Torquay protocol and Presidential notification, *supra:*

Articles manufactured in whole or in part, not specially provided for (* * *)_____ 10% ad val.

At the call of this case for hearing, the following exhibits were received in evidence in behalf of plaintiff—

Illustrative exhibit 1—An article representative of the small size markers covered by protest 63/5941.

Illustrative exhibit 2—A representative sample of the regular size markers covered by protest 63/5949.

Illustrative exhibit 3—A sample marker representative of the articles in issue in the event exhibits 1 and 2 should dry out.

Also received in evidence, but without being marked, were the entry papers in both protests.

Before the presentation of testimony, the following facts were agreed upon by the parties hereto:

1. That the articles in issue are commonly referred to as markers.

2. Said articles consist of a plastic barrel and a plastic cap.

3. The barrel portion contains ink absorbed in wool fiber and a wick which protrudes from the end of the barrel and runs into the barrel.

4. The markers are not refillable and cannot be used after the ink dries out.

A marker manufactured in this country by the Esterbrook Pen Company of Camden, New Jersey, the component material in chief value of which is aluminum, was received in evidence on behalf of the defendant as exhibit A. Plaintiff conceded that said exhibit is the article on which the Government claims similitude was based and also conceded that the article is in chief value of aluminum. However, plaintiff did not concede that the similitude provisions of paragraph 1559(a) of the Tariff Act of 1930, as amended, *supra*, should have been applied or that the articles in issue in fact have a similar use.

Philip Greenspan, the only witness called to testify, appeared on behalf of plaintiff. He stated that he is a partner in the Exhibit Sales Company, the actual consignee of the instant importations, and that F. B. Vandegrift & Co., Inc., plaintiff herein, is his company's customhouse broker. The Exhibit Sales Company, an importer, exporter, manufacturer, and distributor of general merchandise, has been doing business, with him as a partner, since 1933. He is actively engaged in the affairs of the business.

Greenspan testified to his familiarity with the merchandise in issue, having purchased it and having personally sold it in New York and

Philadelphia. He knows how the articles are used inasmuch as it is part of his duties to investigate such uses before he purchases and sells such articles. When asked to state what they are, the witness replied: "Ink in a plastic container."

After being referred to illustrative exhibit 2, the witness stated that the wick contained therein was used to draw the ink out of the barrel and to make marks in ink by means of the felt tip. He added that the markers in issue are used to spread ink on materials, paper, cardboard, and so forth, in much the same fashion as one would use glue by turning the bottle upside down to distribute glue on paper by means of a spreader. The markers in issue are not used other than to make marks with ink. After the ink runs out, the markers are thrown away.

At the request of Government counsel, Greenspan, with the use of defendant's exhibit A and plaintiff's exhibit 2, which employed orange ink and black ink, respectively, made an "X" and wrote his name on a piece of paper which was received in evidence as defendant's illustrative exhibit B. The witness thereupon stated that exhibits A and 2 apparently functioned in the same way and that the result was the same.

As defendant's illustrative exhibit C, there was received in evidence an article which Witness Greenspan identified as an "Amico" brand marker similar to the merchandise before the court, except for the fact the ink had dried out. The marker was separated into its various parts, and the witness identified said parts as consisting of a cap, a spreader or felt wick, wadding, and an ink container. When the merchandise is bought in Japan, it is not bought as ink but as a marker or ink marker, a complete unit with the ink already in it. His company is interested in the marker as an article and not in ink.

Greenspan testified to the fact that he can make an "X" and write his name with colored chalk on white paper as he had done with the markers on defendant's illustrative exhibit B. He stated, however, that chalk is not indelible and will not withstand washing.

The gist of plaintiff's basic argument is that what was imported was ink, and since paragraph 43 of the Tariff Act of 1930, as modified, contains an *eo nomine* provision for ink, all forms of the article are included. And inasmuch as liquid ink can not be handled as an article of commerce unless it is in a container, the provision for ink contemplates a container. Reference was made in a general way to a variety of analogous container-dispensers for glue, liquid cleaners, hand lotions, and other substances.

Although the argument is ingenious, it is not convincing and is not borne out by the record before the court.

The article in issue is not ink *per se* but an article which employs ink in the performance of the function for which it was designed and

produced, namely, a marker. Ink in and of itself can not be used for the same purpose as a marker inasmuch as it must be applied by some other article, device, or mechanism, such as a pen point, a fountain pen, or a print roller, before it can serve the purpose for which it was produced. The article at bar is such a combination article in that it consists of an ink-impregnated wadding and a felt tip, contained in a plastic cartridge or case.

Although the case of *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C.D. 1619, is not on all fours with the facts and issue in the instant case, part of the rationale of decision in that case bears a direct relationship. Involved in the *Donalds* case were vapex inhalers intended to clear the nasal passages of human beings and thus afford relief in cases of common colds. The inhalers, consisting of a hollow cylindrical holder about 2¼ inches in length, a cotton core, and a liquid inhalant known as "vapex," were imported in a completely assembled condition. The point in issue in that case was whether the holders were properly subject to the assessment of additional duties imposed by virtue of section 504 of the Tariff Act of 1930 on the ground that they consisted of unusual materials, articles, or forms designed for use otherwise than in the *bona fide* transportation of such merchandise to the United States. In holding the additional duties to be inapplicable, the court synopsized the doctrine of entireties as it applies to customs jurisprudence in the following language:

\* \* \* If what is imported as a unit is actually and commercially two or more individual entities which, even though imported joined or assembled together, nevertheless, retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combination as though they had been imported separately. Conversely, if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent.

The court then went on to say—

Applying what has been said to the situation before us, it is quite obvious from a reading of the stipulation and an examination of exhibit 1 that what we have involved in this case is a single commercial unit, viz, an inhaler, consisting of three parts (holder, cotton core, and inhalant), imported in a completely assembled condition. We think it is clear that the individual identities of the holder, cotton core, and inhalant, while still existing and recognizable as such, have been subordinated in the creation of a combined entity which is a complete article of commerce bearing a name, inhaler, different from the names of its parts.

By analogous reasoning, in the case at bar we are of the opinion that the components of which the imported articles are made, namely,

ink-impregnated wadding, a felt tip, and a plastic cartridge or case, imported as they are in a completely assembled condition, the identities of which are still recognizable as such, have been so merged and subordinated as to form a complete article of commerce, bearing a name, marker, differing from the names of its parts. Clearly, therefore, plaintiff's basic claim for classification of the imported articles as ink in paragraph 43 of the Tariff Act of 1930, as modified, must fall.

Nor may the article be held to be similar to chalk or a manufacture thereof, which is the first of plaintiff's two alternative claims. One of the outstanding characteristics of the imported article as a marker is the permanence with which the marking is made. This is so for the reason that in its function of marking it uses ink which is indelible and washable. Plaintiff's witness, however, admitted that chalk does not possess these attributes.

On this aspect of the case, it is interesting to note the following expression of the Court of Customs and Patent Appeals in *United States* v. *Wecolite Co.*, 45 CCPA 54, C.A.D. 672, on the point of similitude of use—

It is clear from the reliance of the court, on the foregoing cases [*United States* v. *Roessler*, 137 Fed. Rep. 770; *Pickhardt* v. *Merritt*, 132 U.S. 252; *Murphy* v. *Arnson*, 96 U.S. 131] that "mode of operation" was a critical factor in determining similitude in use. Aside from other requirements which may exist, only if they are "used substantially in the same manner" is there a similitude in use.

That this is the law is hardly to be disputed. Thus, in *United States* v. *Godillot & Co.*, 3 Ct. Cust. Appls. 128, T.D. 32382, it was stated that:

* * * To constitute similitude of use the results of the use must be substantially the same *and achieved substantially in the same way*. Pickhardt *v.* Merritt (132 U.S., 252, 258). It seems to us that there is no more reason for saying that a night light is similar to the modern taper or to the taper candle than there is for saying that a modern candle is similar to a match or that the candle itself is similar to a kerosene lamp. Tapers, matches, candles, taper candles, kerosene lamps, and electric bulbs all furnish light, some for brief, some for longer periods; but that fact, standing by itself, can hardly be said to rank them as articles of similar use. [Emphasis quoted.]

In the circumstances of the present case, whereas a piece of chalk as well as the imported ink markers may be used to mark, the fact is that chalk is delible and subject to obliteration by washing whereas ink is indelible and washable. Therefore, it can hardly be said that they are articles of similar use. In the circumstances, we consider plaintiff's alternative claim for classification of the articles in issue as chalk or a manufacture thereof in paragraph 20 of the tariff act as modified, *supra*, to be untenable.

Inasmuch as the markers in issue are not enumerated in the Tariff Act of 1930, or as modified, the similitude provisions of paragraph

1559 (a) of the Tariff Act of 1930, as amended, *supra*, must be availed of before resort may be had to the residuary provisions of paragraph 1558 of said act applicable to nonenumerated articles, the third statutory provision invoked by plaintiff. *Isler & Guye* v. *United States*, 11 Ct. Cust. Appls. 340, T.D. 39146.

The controlling consideration in the application of the similitude provision of paragraph 1559 (a) of the Tariff Act of 1930, as amended, *supra*, is similitude of use. Not only does the evidence presented in the instant case fail to disturb the classification of the merchandise at bar as articles composed in chief value of aluminum, not specially provided for, in paragraph 397 of the Tariff Act of 1930, as modified by the sixth protocol, *supra*, by similitude of use to the article received in evidence as defendant's exhibit A, but said evidence supports said position. As an instance, towards the end of the trial of this case, plaintiff's witness Greenspan was asked by the court: "* * * When you tested the two so-called markers [exhibits 2 and A] and wrote your name on Illustrative Exhibit B did you observe any difference in the functioning of the markers while you were using them?", to which the witness replied: "I did not. They seemed to mark the same way."

From the evidence presented in this case and from a consideration of the briefs of the parties and applicable judicial authorities, the court is clearly of the opinion that the action of the customs authorities in classifying the markers in issue in paragraph 397 of the Tariff Act of 1930, as modified by the sixth protocol, *supra*, as articles composed in chief value of aluminum, not specially provided for, by virtue of the similitude provisions of paragraph 1559 (a) of said act, as amended, *supra*, was correct. Accordingly, all claims in the above-enumerated protests endeavoring to controvert said classification are overruled.

Judgment will be entered accordingly.