BEFORE THE FIRST DIVISION, NOVEMBER 15, 1961

**No. 66211.**—Castelazo & Associates and Surgident, Ltd. *v.* United States, protest 60/10290 (Los Angeles).

OLIVER, Chief Judge:   This protest relates to merchandise that is generally described on the invoices as "Directa" protective crowns.   It was classified, by

similitude in use, to cellulose acetate articles under paragraph 31(a)(2) of the Tariff Act of 1930, as modified by T.D. 54108, and paragraph 1559, as amended by T.D. 53599, with a duty assessment at the rate of 17 per centum ad valorem. Plaintiffs claim that the merchandise is properly classifiable under the provision for nonenumerated manufactured articles in paragraph 1558, as modified by T.D. 52739, supplemented by T.D. 52827, carrying a dutiable assessment of only 10 per centum ad valorem.

The record herein consists of the testimony of two witnesses—one for plaintiffs and the other for defendant—and representative samples of the present merchandise and comparable products.

Plaintiffs' witness is a sales representative for Surgident, Ltd., a manufacturer of dental products and the exclusive distributor in the United States of the merchandise involved herein. The witness stated that he also works as a dental technician, doing research work in the laboratory of Surgident, Ltd. Prior to his association with his present employer and since 1932, the witness was employed as a dental technician, manufacturing, in accordance with dentists' prescriptions, appliances that go into the mouth. In his capacity as a dental technician, the witness worked all over the United States, through which experience he acquired complete familiarity with all types of material used in making "dental restorations," which he defined as "any appliance put into the mouth, to replace or conserve natural teeth." (R. 6.)

The witness identified a representative sample of the present merchandise as it is imported in a cardboard container, describing the contents as "DIRECTA—Protective Crown—10 Cuspids." The so-called "protective crowns" consist of an individual group of tooth-shaped hollow caps of uniform color, which can be described as off-white—a neutral, unobtrusive tooth color not readily noticeable when in the mouth. They have the general appearance of false teeth that are attached to a horizontal holder, five on the upper side and five on the lower side of the holder. Each has a number, indicative of its particular use. They can, and apparently are, designed to be individually broken off when one is to be used. The entire group measures approximately 3 inches in length and 1¼ inches in width (plaintiffs' exhibit 1). It was stipulated between counsel for the respective parties that the merchandise in question is composed of a synthetic resin material, specifically polystyrene.

The witness described the articles in question as preformed crowns for anterior teeth, i.e., the six front teeth. They are new dental appliances and are intended for temporary use only, being made to last approximately 4 months. They are used to protect teeth that have been ground in preparation for the fitting of a permanent crown. To apply them to such use, one of the desired size is removed or broken from the imported holder. A soft, plastic substance, identified as "methyl methacrylate" (R. 11), is put into the temporary crown which is placed in the patient's mouth. The methyl methacrylate becomes hard, and the temporary crown is cemented into place. When the permanent crown has been made and is ready to be fitted into the patient's mouth, the temporary crown is removed and discarded. The witness' testimony, explaining the use of the articles in controversy, appears in the record as follows (R. 10–11):

Q. Would you explain to the Court how Exhibit 1 is used?—A. A patient goes in to a doctor. A tooth is ground down for a permanent crown to go on this tooth. The tooth is not lost, it's only ground down. They're going to put a cap on it, but it takes from 3 days to 2 weeks to make this permanent crown, which will be made of porcelain.

Q. And, who will make this?—A. The dental technician will probably make this. In the meantime, this tooth that has been ground down is very sensitive,

and must be protected. This temporary crown is used for that purpose, to protect this prepared tooth.

\* \* \* \* \* \* \*

Q. And, then, when the permanent crown arrives, what happens to this?— A. This crown is removed, discarded, and the permanent crown is put into position.

To support his testimony that the preformed crowns in question are not similar in use with other dental protective items, the witness referred to certain celluloid capsules, containing cellulose acetate items (plaintiffs' collective exhibit 2–A), and a stainless steel crown (plaintiffs' exhibit 3). Concerning the cellulose acetate items, he testified that they are not "temporary or permanent" crowns, but are used "in conjunction with making a permanent repair on a tooth," and are held on a tooth for "never more than 48 hours." Testifying further in connection therewith, the witness stated that the cellulose acetate articles (exhibit 2–A, *supra*) are "used as a matrix" and that "they're containers to hold a form that is not solid in place against a natural tooth, until this material [synthetic porcelain] hardens, or cures. Then, this jacket, or form, is stripped off." (R. 14.) The stainless steel crown (exhibit 3, *supra*) is a "permanent crown," that is used as a "protection for deciduous, or baby teeth, until they are erupted or disposed of." (R. 20.) The witness also referred to crowns for posterior teeth, stating that such crowns are made either of aluminum or tin, which materials are desirable or acceptable for molars and other posterior teeth that are not ordinarily visible, with which the metal crowns are used.

Defendant's witness stated that he is a dentist, practicing his profession in Hollywood, Calif., and also an instructor in the School of Dentistry in the University of California at Los Angeles, teaching the "phase of crown and bridge," which "encompasses this part of dentistry that deals with the construction of permanent restorations which are cemented permanently to existing teeth." (R. 38.) Substantially all of the witness' testimony related to certain capsules, containing cellulose acetate matrixes (defendant's exhibit A), that are made into different shapes and forms to fit various sizes of teeth. Describing the use of the cellulose acetate matrixes (exhibit A, *supra*), the witness testified as follows (R. 39):

\* \* \* after selecting the proper mold for the size of tooth that is to be temporarily restored, this particular matrix is cut to fit an existing condition, or to fit a tooth stump of the prepared tooth, and then it is filled with plastic, and glazed, or pressed on the prepared tooth. Then, once the plastic has set, the crown is removed, and then this particular type of matrix is peeled off. The plastic, which is shaped inside, is then used as the temporary crown, or guard.

The witness further testified that the use of the matrixes (exhibit A, *supra*) is identical with the use of the cellulose acetate matrixes (exhibit 2–A, *supra*), heretofore referred to.

Admitting that there is a difference in use between the articles in question (plaintiffs' exhibit 1) and the matrixes, composed of cellulose acetate (plaintiffs' collective exhibit 2–A), and (defendant's exhibit A), the witness stated that the preformed crowns in controversy are, in their imported condition, temporary crowns, whereas the said cellulose acetate matrixes serve only as covers or retainers that are removed after the hardening or the setting of the synthetic porcelain or plastic substance forms the temporary crown.

Defendant's brief refers to certain cases that discussed the principle of classification by similitude. *Maher-App & Company* v. *United States*, 44 C.C.P.A. (Customs) 22, C.A.D. 630; *Hartmann Trunk Co.* v. *United States*, 27 C.C.P.A. (Customs) 254, C.A.D. 95; *Corporacion Argentina de Productores de Carnes* v.

*United States*, 29 C.C.P.A. (Customs) 288, C.A.D. 204; *Mary G. Ricks* v. *United States*, 33 C.C.P.A. (Customs) 1, C.A.D. 308. Following is a brief outline of each of the cited cases.

In the *Maher-App & Company* case, the merchandise in question was held not to be classifiable by similitude to the porcelain articles provided for in paragraph 212 of the Tariff Act of 1930, as modified, because the false teeth there under consideration did not show, when broken, "a vitrified or vitreous, or semivitrified or semivitreous fracture," a statutory limitation applicable to merchandise classifiable under said modified paragraph.

In the *Corporacion Argentina de Productores de Carnes* case, the merchandise consisted of certain dog food that was classified as a nonenumerated manufactured article and which was claimed to be classifiable by similitude to the mixed feeds provided for in paragraph 730 of the Tariff Act of 1930. Although both the imported commodity and the articles enumerated in the law were generally used as foods, the court overruled the claim for classification by similitude in the absence of "any evidence of record that the involved dog food has substantially the same nutritive value, or that it produces substantially the same results, as any of the mixed feeds specially provided for in paragraph 730, *supra*."

The *Hartmann Trunk Co.* case related to certain steer hides that had been processed to the point where they were suitable for use in bag or case leather. The court, therefore, held such hides to be classifiable by similitude in use to the bag and case leather provided for in paragraph 1530(a)(5) of the Tariff Act of 1930.

In the *Mary G. Ricks* case, so-called "barley bran," a byproduct of the maltproducing industry, was held not to be classifiable by similitude of use with the byproducts and mixed feeds provided for in paragraph 730 of the Tariff Act of 1930, as modified, although both the imported merchandise and that covered by the statute were used for the same purpose, i.e., feeding cattle.

The importance of the cited cases lies in their emphasis on the proposition that there must be a substantial sameness in comparable products before tariff classification by similitude can be invoked.

The polystyrene, preformed crowns involved herein are finished products, ready for dental use. They are new dental appliances, specifically made to be used as temporary crowns on anterior teeth with which they are exclusively employed. When one of these temporary crowns is fitted to the prepared tooth that it is designed to protect, it remains in place until the permanent crown is ready to be placed in position. The cellulose acetate matrixes referred to in the testimony of the witnesses are merely containers to hold a plastic substance, formed by a dentist, to a prepared tooth until the temporary crown is set, at which time, the cellulose matrix is peeled off, leaving a plastic temporary crown. There is a substantial difference in use between the preformed crowns in question and the cellulose acetate matrixes discussed by the witnesses. The imported articles under consideration are, of themselves, temporary crowns; the cellulose acetate matrixes mentioned herein are coverings or retainers that serve to facilitate the formation of temporary plastic crowns.

On the basis of the present record, and for all of the reasons hereinabove set forth, we find that the polystyrene, preformed temporary crowns under consideration are not properly classifiable by similitude in use to cellulose acetate articles, as assessed by the collector.

It is appropriate to repeat here what was stated in *Salentine & Company, Inc.* v. *United States*, 46 Cust. Ct. 357, Abstract 65216, which involved an issue substantially the same as that now before us. In that case, the merchandise was

classified by similitude in use to india rubber articles and was claimed by plaintiff to be classifiable as nonenumerated manufactured articles. In sustaining plaintiff's claim, we stated as follows:

* * * The classification by the collector of the merchandise by similitude under paragraph 1559 is tantamount to an admission on the part of the defendant that the merchandise is not classifiable directly under any of the dutiable enumerations of the tariff act. The plaintiff has established that the classification by similitude to manufactures of india rubber was erroneous, and the defendant has not gone forward with the evidence and established the correctness of classification by similitude under any other enumeration. It would appear, therefore, that the classification claimed by the plaintiff under the nonenumerated manufactured articles provision in paragraph 1558, as modified, *supra*, is correct.

The reasoning employed in the foregoing quotation has equal application, with the same force and effect, in this case. Accordingly, we hold the merchandise in question, as heretofore identified, to be properly dutiable at the rate of 10 per centum ad valorem under paragraph 1558, as modified, *supra*, as nonenumerated manufactured articles, as claimed by plaintiffs.

The protest is sustained and judgment will be rendered accordingly.