BEFORE THE FIRST DIVISION, SEPTEMBER 10, 1962

No. 67011.—Zenith Novelty Co. et al. *v.* United States, protests 60/6702, etc. (New York).

OLIVER, Chief Judge: These three protests involve certain plastic articles. In protest 60/6702, the item in question is identified on the invoice as "C/No. Y–4296/4331" and generally described as vinyl fishes. It was classified by similitude in use to compounds of cellulose, made into finished articles of which cellulose is the component material of chief value, under paragraph 31(b)(2) of the Tariff Act of 1930, as modified, and paragraph 1559, as amended, and assessed with duty at the rate of 25½ per centum ad valorem. In protest 59/32330, the merchandise in dispute is described on the invoice as "Flo-matic Feeders," and in protest 60/18630, the item in question is described on the invoice as "Plastic Water Fountain." In both of those protests, the merchandise in controversy was classified by similitude in use to manufactures of glass, pressed and polished, under paragraph 230(d) of the Tariff Act of 1930, as modified, and paragraph 1559, as amended, and assessed with duty at the rate of 25 per centum ad valorem.

Plaintiffs claim that all of the merchandise in question, as hereinabove identified, is properly classifiable as nonenumerated manufactured articles under paragraph 1558 of the Tariff Act of 1930, as amended, carrying a dutiable rate of 10 per centum ad valorem. All other claims in the protests have been abandoned.

Classification, by the collector, of merchandise by similitude "is tantamount to an admission on the part of the defendant that the merchandise is not classifiable directly under any of the dutiable enumerations of the tariff act." *Salentine & Company, Inc.* v. *United States*, 46 Cust. Ct. 357, Abstract 65216. Hence, if the articles involved herein are not properly classifiable by similitude, as assessed by the collector, then plaintiffs' claim for classification as nenenumerated manufactured articles must be sustained.

Samples of the merchandise in question are in evidence. The vinyl fishes (plaintiffs' exhibit 1) consist of two small plastic fish, one about 2 inches long and the other about 1 inch long. To each of them is attached a thin line on which is affixed a tiny metal weight, or sinker. They are enclosed in a clear plastic envelope, which also contains certain plastic plantlike forms, representing leaves and seaweed. The "Flo-matic Feeder" (plaintiffs' exhibit 2) consists of a clear plastic tube, approximately 6 inches long and 1½ inches in diameter. It is closed at the top and open at the bottom. A metal clip is attached to the side thereof. To the base of the plastic tube, there is fitted a red plastic, troughlike, receptacle that projects outward about 1½ inches. On the circumference of the bottom, or open end, of the tube, there is a small cutout. By turning the tube as it is fitted to the troughlike receptacle, the cutout may be placed either in front of the trough or away from it. The "Plastic Water Fountain" (plaintiffs' exhibit 3) is substantially the same as the "Flo-matic Feeder" (said exhibit 2), except that the tube is longer and narrower.

Testimony concerning the use of the present merchandise was submitted by a partner of the Zenith Novelty Co. and the Advance Pet Supply Co., plaintiffs herein. He stated that he has been engaged in the "pet supplies" business since 1931; that, during the period, he has become familiar with thousands of different aquarium and other pet items; and that his experience in the business extends throughout the United States. Following is a summary of the witness' testimony.

The vinyl fish (exhibit 1, *supra*) are decorative or ornamental pieces, made to give the appearance of fish swimming in an aquarium designed for a tropical fish set. The string is so attached as to permit the fish being suspended horizontally in the water, and the small lead weight, or sinker, allows for adjustments to place the fish at any desired depth in the water. As stated by the witness, "the fish can be set near the bottom or higher up, or at any level that the user desires to show this in the aquarium." (R. 11.) The prototype article, adopted by the collector in his classification of the vinyl fish by similitude in use to compounds of cellulose, is identified as item 232 in plaintiffs' catalog, wherein it is described as "Floating celluloid water lily with cork float and frog on leaf" (defendant's exhibit B). While the witness recognized the said item as an ornamental piece which, like vinyl fish, is intended for use in an aquarium, he stated that there is a material difference in the manner of uses of both articles. He explained the difference in uses (R. 34) as follows:

The item 232, celluloid water lily, has a cork float, otherwise it would probably sink. It was used originally—it is a very old item—it was used originally on top of the gold fish aquarium, which in a gold fish set up is entirely different from a tropical fish set up. Tropical fish and gold fish are not ethically combined. This floats on top by virtue of the cork float, which was put there to

keep it on top of the water. Exhibit 1, the fishes are suspended from a string and weighted down to resemble actual tropical fish in an aquarium, and look like fish, and be decorative in the way of supplementary fish, probably with the idea they would not die as fast as live fish would, and remain decorative for a longer time. The fish in this particular item float on their own and are held down.

Further distinguishing the uses of the aquarium items under discussion, the witness stated that the celluloid water lily (exhibit B, *supra*) is a floating item, i.e., "something that stays on top of the water" (R. 25), while the vinyl fish (exhibit 1, *supra*) are made to be suspended in water and remain horizontal with the aid of the sinker at a predetermined depth. The tropical fish aquarium, in which the vinyl fish are used, is covered so that the top of the water is hardly visible. A goldfish aquarium, in which the celluloid water lily floats, has an open top. In concluding his testimony concerning the vinyl fish (exhibit 1), the witness stated that he knew of no other item of the design and construction of this imported item that was used in the same way, except other forms, like sea horses, mermaids, or skindivers, imported by plaintiffs.

The "Flo-matic Feeder" and the "Plastic Water Fountain" (exhibits 2 and 3, *supra*) are combination seed and water feeders for use on birdcages in caring for pet birds. The imported articles are attached to a birdcage by means of the metal clip, which also has the effect of stabilizing the tube against the cage and preventing it from tilting. The narrow, troughlike receptacle is put through the wires and placed inside the cage while the plastic tube is fitted outside, away from the birds. The arrangement permits the feeder to be cleaned and refilled without opening the cage, or removing the feeder from its original position. The witness stated that he knew of no combination seed and water feeders made of glass that were used like the feeders under consideration.

Defendant introduced the testimony of one witness. He stated that, since 1929, he has been in the business of manufacturing birdcages, and buying and selling bird accessories and seed, "everything concerned with birds." (R. 39.) All of his testimony relates to the combination water and seed feeders. The prototypes, upon which the collector based his classification by similitude to the imported feeders, are handled by the witness in his business. Both of them are heavy, clear glass articles, consisting of two separate and distinct parts, i.e., a base and a jar. In one of the glass prototypes, that the witness described as "an English fountain or feeder which we import from England" (defendant's exhibit C), the jar has an indentation on the side thereof that facilitates passing the seed or water onto the tray or base. With respect to the other glass feeder (defendant's exhibit D), the witness stated that he sells only the glass base, that an ordinary mason jar is used therewith, that both parts are always sold as a unit, and that this type of feeder is used in chicken coops, as well as in birdcages. When these glass feeders are in use in birdcages, the jar, which is the container for the seed or water, is placed, in an inverted position, over the base which holds the seed or water for the birds to feed or drink. The glass feeders, unlike the plastic feeders in controversy, are always placed inside the birdcage, usually in the middle. Occasionally, they are placed on a platform, but ordinarily they are set on the floor or the bottom of the birdcage.

Classification by similitude in use is not satisfied by a showing of general usage of two comparable products. There must be a substantial sameness in the method of use and the effect or productive result of the two products. Such a construction was applied in *Pickhardt* v. *Merritt*, 132 U.S. 252, that involved the matter of similitude in use as it related to imported coal-tar colors or dyes and a tariff provision for aniline dyes. Referring to both classes of articles, the Court said that "the mere application to the dyeing of fabrics would not create the similitude," but "if there was a similitude in the mode of use, a similitude in

the same kind of dyeing, producing the same colors in substantially the same way, so as to take the place of aniline dyes in use, there would be a similitude in use."

In *Wecolite Company* v. *United States*, 38 Cust. Ct. 167, C.D. 1858, affirmed in *United States* v. *Wecolite Co.*, 45 C.C.P.A. (Customs) 54, C.A.D. 672, certain plastic mustard dispensers were held *not* to be classifiable by similitude in use to comparable blown glass articles. In reaching its conclusion, our appellate court quoted with approval from our decision, C.D. 1858, *supra*, wherein we stated as follows:

The mere fact that the imported articles hold, and are used to dispense, mustard, and that, in their end use, they are thus employed for the same purpose as is indicated for certain blown glass dispensers does not constitute, in itself, in our opinion, a "substantial resemblance" to support the application of the similitude clause to the imported merchandise, by virtue of similitude of "use," as is here contended by the defendant.

The cited authorities support the proposition that mere general usages of imported products and their prototypes are not sufficient to invoke the provisions governing classification by similitude in use under paragraph 1559, as amended. Applying the rule to the present issue, it can be said that the general uses of merchandise as ornaments in aquariums (plaintiffs' exhibit 1 and defendant's exhibit B), or as feeders for birds (plaintiffs' exhibits 2 and 3, and defendant's exhibits C and D), are merely superficial samenesses of like articles, that are not determinative of classification by similitude in use of the imported items in question.

The substantial difference between the articles in controversy and their prototypes, upon which the collector's classification by similitude in use was predicated, lies in the mode of use of the different commodities. As to the aquarium ornaments (exhibit 1 and exhibit B, *supra*), each performs its specific function in the particular type of aquarium in which it is used. The vinyl fish (exhibit 1) are suspended forms or shapes in a tropical fish aquarium, with closed top, where they are placed in a predetermined depth of water. The celluloid water lily (defendant's exhibit B) is a floating ornament that remains on top of water in an open-top aquarium. While both articles serve to decorate a particular type or kind of aquarium, the manner of use of each, as an ornament, is substantially different.

An equally material difference in the mode of use exists between the different kinds of combination seed and water feeders under discussion. The plastic feeders in question (exhibits 2 and 3, *supra*), by their light construction and specially fitted metal clip, are designed to be, and are, permanently attached to a birdcage so the birds can be cared for without having to remove the feeders, either for cleaning or for refilling, from their original position. The same is not true with respect to the heavy glass feeders (exhibits C and D, *supra*), that are placed inside a birdcage and which, unlike the plastic feeders, cannot be cleaned or refilled without being removed from the cage. It is also important to observe that one of the glass feeders (defendant's exhibit D) is employed in chicken coops, which use is wholly unrelated to the plastic feeders in question that are exclusively used with birdcages.

The substantial differences in the mode of use of the articles in question from their prototypes, hereinabove discussed, are sufficient to exclude the present merchandise from the similitude provisions of paragraph 1559, as amended, invoked by the collector.

On the basis of the present record and for all of the reasons hereinabove set forth, we hold that the articles in question, as heretofore identified, are not classifiable by similitude in use, as assessed by the collector. They are properly

dutiable as nonenumerated manufactured articles under paragraph 1558, as amended, carrying a dutiable rate of duty of 10 per centum ad valorem, as claimed by plaintiffs.

Consideration has been given to all of the cases cited in the briefs of counsel for the respective parties. Reference herein has been made only to those cases considered necessary to support the reasoning followed and the conclusion reached.

To the extent indicated, the protests are sustained, and judgment will be rendered accordingly.