(C.D. 2505)

SCIENTIFIC PACKAGING CORPORATION
A. N. DERINGER, INC.
} *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 18, 1965)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiffs.
*John W. Douglas*, Assistant Attorney General (*Glenn E. Harris*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This case is concerned with the proper dutiable classification of an importation of polyethylene bags encased in cardboard tubes. The collector of customs at the port of entry invoked the similitude provisions of paragraph 1559 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, to classify this merchandise within the provisions of paragraph 923 of the Tariff Act of 1930, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, supplemented by Presidential notification, 90 Treas. Dec. 280, T.D. 53877, as manufactures of cotton, not specially provided for, dutiable at the rate of 20 per centum ad valorem.

Plaintiffs disclaim similitude of the imported items to the particular manufacture of cotton selected by the collector and assert that they are

dutiable at the rate of 10 per centum ad valorem, as nonenumerated manufactured articles, not specially provided for, within the purview of paragraph 1558 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, supplemented by T.D. 52827.

The relevant statutory language reads as follows:

Paragraph 1559, as amended, *supra:*

PAR. 1559. (a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

(b) The words "component of chief value," wherever used in this Act, shall be held to mean that component material which shall exceed in value any other single component material of the article involved; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article.

(c) If two or more enumerations shall be equally applicable to any article, it shall be subject to duty at the highest rate prescribed for any such enumeration.

Paragraph 923, as modified, *supra:*

All manufactures, wholly or in chief value of cotton, not specially provided for:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Other * * *_____ 20% ad val.

Paragraph 1558, as modified, *supra:*

Articles manufactured in whole or in part, not specially provided for (except * * *) _____ 10% ad val.

At the outset, we deem it pertinent to observe that, in view of the text of the foregoing provisions and under settled principles of law, the collector's action in classifying this merchandise by similitude to manufactures of cotton presupposes that it is not dutiable directly under any of the express enumerations in title I of the Tariff Act of 1930, and/or as amended or modified. *Salentine & Company, Inc.* v. *United States*, 46 Cust. Ct. 357, Abstract 65216; *Castelazo & Associates and Surgident, Ltd.* v. *United States*, 47 Cust. Ct. 365, Abstract 66211; *Zenith Novelty Co. et al.* v. *United States*, 49 Cust. Ct. 215, Abstract 67011. It is also so well established as to be virtually axiomatic that the collector's classification is presumptively correct and that he has found every fact to exist which was essential to his decision. *E. I. du Pont de Nemours & Co.* v. *United States*, 27 CCPA 146, C.A.D. 75; *United States* v. *Marshall Field & Co.*, 17 CCPA 1, T.D. 43309; *F. H. Kaysing* v. *United States*, 49 CCPA 69, C.A.D. 798;

and the burden rests with the party challenging such classification to show not only that the collector's action was erroneous, but to establish the correctness of the claimed classification. *United States* v. *Gardel Industries*, 33 CCPA 118, C.A.D. 325, *United States* v. *Victoria Gin Co., Inc., et al.*, 48 CCPA 33, C.A.D. 759; *Atlantic Aluminum & Metal Distributors, Inc.* v. *United States*, 47 CCPA 88, C.A.D. 735.

The collector having classified the subject merchandise by similitude to manufactures of cotton, the presumption of correctness attaching to his action operates to establish in the first instance that such merchandise more closely resembles a cotton manufactured article in respect to use than any other item provided for in the dutiable schedules.

As this case has been submitted for decision, the parties appear to have tacitly agreed that the particular cotton article selected by the collector as prototype merchandise was a cotton cloth laundry bag.

In support of their contention that the subject merchandise is not similar in use to cotton laundry bags, plaintiffs introduced the testimony of one witness, Mr. Guido Brina, president and general manager of Scientific Packaging Corp., which is a supplier of laundry ingredients and auxiliary items for the coin-operated laundry trade, and the following enumerated exhibits were received in evidence:

Plaintiffs' exhibit 1, a polyethylene bag in a tube, representative of the instant bags in the imported condition.

Plaintiffs' exhibit 1–A, another polyethylene bag and cardboard tube.

Plaintiff's illustrative exhibit 2, a photograph of the special machine which dispenses the instant merchandise.

Plaintiffs' illustrative exhibit 3, a copy of letters patent of the vending machine depicted in plaintiffs' illustrative exhibit 2.

Plaintiffs' illustrative exhibit 4, a sample of a cotton laundry bag.

The foregoing constitutes the entire record in the case, as no proof was offered by the defendant. It tends to establish that polyethylene bags of the kind here involved, which are large plastic bags encased in cardboard tubes, are dispensed by machines stationed for the most part in coin-operated laundries. The principal purpose of such bags is to serve as laundry bags for carting laundry to and from launderettes, that is to say, self-service laundries. The witness has also seen them used to contain fish catches and soiled diapers. Other bags used to hold wet or dry laundry are standard cloth laundry bags, like plaintiffs' illustrative exhibit 4, and waxlined paper bags. Launderette customers have also used such items as pillowcases, baskets, sheets, and "anything their ingenuity devises" to cart their laundry.

The witness pointed out some of the characteristics which distinguish plastic bags from cloth- and wax-lined paper bags as the fact that a plastic bag is waterproof and thus is more desirable for holding

wet wash or wet fish, and for protecting its contents from damp surfaces; it has the property of containing odors, an advantage with soiled clothes, especially diapers, and with fish; it is mothproof, which adapts it for storing clothes; it has a low freezing point and can retain moisture, which render it useful for food freezing. He further stated that plastic bags sell for 10 cents each, whereas cloth laundry bags retail for about $1.25 in the size of plaintiffs' illustrative exhibit 4 and 90 cents in a smaller size; and that he does not know of any other bag which is vended in the same way in a coin-operated machine.

While it thus appears that the instant bags are susceptible of the many uses described in the record, and mentioned on the dispensing machine as "hat storage, clothing, blankets, beach bags, ice cubes, fishing, frozen foods, toys," the witness, who was actively engaged in promoting the sale of this product throughout the country, admitted that 99 per centum of the machines which dispense these bags are located in coin-operated laundries, and that, insofar as other uses are concerned, he had only once seen a bag used for the storage of hats, about five times as a container of wet or soiled diapers, and, apparently, never in any other way.

From this record, which is composed wholly of evidence introduced by and in behalf of plaintiffs, it must be apparent that the major and primary use of the subject bags is for the purpose of transporting wash to and from coin-operated self-service laundries, and that so far as the proof is concerned, any other use is either incidental or potential. Nevertheless, plaintiffs contend that, by reason of the method by which they are dispensed, their susceptibility of use for the various other purposes specified in the record, and the fact that they are waterproof, the plastic bags in issue are wholly dissimilar in respect to use to cotton and/or paper bags. It is further contended that the capacity to carry laundry is possessed not only by cloth laundry bags, but also by many other containers, and that similarity of such a broad character is insufficient to warrant the application of the similitude provision.

Counsel for defendant relies upon the substantial identity of the principal function of these articles and of cotton laundry bags, in holding and transporting both wet and dry laundry, as establishing statutory similitude, and suggests that the method by which plastic bags are dispensed and the increased efficiency deriving from the plastic material of which they are composed are insufficient criteria to deny similitude.

By virtue of the present text of the similitude provision, use has become the only element to be considered in determining similarity, unless it be shown that the article in issue equally resembles two or more enumerated articles subject to different rates of duty. In this

respect, the present provision differs from its predecessors which included, as relevant determinants of similitude, not only use, but also material, quality, and texture. But in eliminating the three last-mentioned properties as significant tests of similitude, we do not believe that the legislature contemplated any different construction of the scope of the use factor than had previously obtained. This we believe to be implicit in the consistent holdings under the prior statutes that the named elements were to be considered as alternative rather than as joint. *United States* v. *Steinberg Bros., etc.,* 47 CCPA 47, C.A.D. 727.

As stated in *Corporacion Argentina de Productores de Carnes* v. *United States,* 29 CCPA 288, C.A.D. 204:

The similitude clause does not require that the resemblance should be in all four of the particulars mentioned—material, quality, texture, and use—a substantial similarity in one of those particulars being adequate. * * *

Where use has been the particular upon which a finding of similarity depended, the courts have held over the years that proof of a mere general resemblance in use is inadequate. Similitude of use requires evidence of a substantial similarity in method, function, or productive result. *Pickhardt* v. *Merritt,* 132 U.S. 252; *United States* v. *Godillot & Co.,* 3 Ct. Cust. Appls. 128, T.D. 32382; *United States* v. *Wecolite Co.,* 45 CCPA 54, C.A.D. 672; *General Systems Service, Inc.* v. *United States,* 42 Cust. Ct. 215, C.D. 2089.

It is in these respects that the subject bags must be compared with cotton laundry bags to determine whether or not there is any real similarity In this case, the presumption attendant upon the collector's action presupposes that there is, and it was the plaintiffs' burden to establish the contrary. Similitude is ultimately a question of fact, looking toward the existence, not of identity, but of substantial resemblance.

Unless, of course, the material, quality, or texture of an article has a direct effect upon the manner in which it is employed, and the purposes it achieves, these are irrelevant factors in the consideration of similarity of use, especially now that they have been eliminated from the phraseology of the similitude provision. So the fact that the imported bags are plastic would not *per se* establish a lack of similarity to cotton laundry bags, in respect to use.

Even though, by virtue of being plastic, the instant bags are shown to possess special qualities which impart the capacity to serve many purposes, it has not been proven in this case that they are actually used for those purposes. At best, the record shows that in the principal function the bags are designed to perform—the transportation of laundry—they have an advantage over cloth laundry bags in that they are waterproof. Yet, it does not appear that this advantage permits performance of the act of carrying laundry to and from a launderette

in any different fashion so as to distinguish them from cotton laundry bags. For all that this record reveals, the same result is achieved in much the same way, and similitude has not been negatived.

Neither do we consider as having any bearing on the issue here the fact that the instant bags are dispensed in a special kind of vending machine. This is a feature which, no doubt, would have much significance in the field of merchandising a product, but seemingly is of little relevance to the way in which a product is used.

Moreover, while the witness for plaintiffs adverted to wax-lined paper bags as being used in coin-operated laundries, he admitted that their use was not frequent, and that the only bag, other than plastic, used to any extent, was the standard cloth laundry bag. His testimony, in this connection, under direct examination by counsel, went as follows:

Q. Based upon your experience, do you know of any other bag which is used to hold wet or dry laundry in a coin-operated laundry?—A. If I understand the question correctly, do I have any knowledge of a coin-operated laundry, yes.

Q. What are those other bags?—A. The standard cloth laundry bag, I have seen people use them and on occasions there have been paper bags with a wax lining used, not very frequently, in a coin-operated laundry. The principal one would be a cloth one.

Whether or not there are substantial differences between plastic and cloth laundry bags indicative of divergent uses or productive results, the present record is inadequate to show them, and we are constrained to hold that the presumption of correctness of the collector's classification of the subject bags has not been overcome. All claims in the protests are, therefore, overruled.

Judgment will be entered accordingly.