(C.D. 2877)

TECHNICAL TAPE CORP. *v.* UNITED STATES

38

United States Customs Court, Second Division

(Decided January 26, 1967)

*Sharretts, Paley & Carter* (*Donald W. Paley, Jack G. Wasserman*, and *M. Barry Levy* of counsel) for the plaintiff.

*Barefoot Sanders*, Assistant Attorney General (*Charles P. Deem* and *Avram Weisberger*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The court is here asked to determine the proper classification for customs duty purposes of certain merchandise consisting of a polyvinyl chloride film, which was described on the invoices as "Genotherm UG * * * crepe." The collector of customs invoked the similitude provisions of paragraph 1559(a) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, to classify this importation as manufactures of cotton, not specially provided for, within the purview of paragraph 923 of said tariff act, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, supplemented by Presidential notification, 90 Treas. Dec. 280, T.D. 53877. Accordingly, duty was assessed at the rate of 20 per centum ad valorem.

Plaintiff interposed several claims in the alternative. Initially, plaintiff contended that the involved merchandise was classifiable by similitude to rubber under paragraph 1537(b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, by virtue of paragraph 1559(a) of said act, as amended, but this claim, having been formally abandoned at trial, is hereby dismissed. Two other claims, that the merchandise is classifiable by similitude to coated and filled cotton cloth under paragraphs 907 and 1559(a) of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and that the merchandise is classifiable by similitude to papers with coated surfaces, not specially provided for, within paragraphs 1405 and 1559(a) of said tariff act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, were not vigorously pressed either at trial or in the briefs of counsel and are, therefore, overruled.

Thus, the main claims upon which plaintiff relies are: that the creped Genotherm in issue is classifiable by virtue of the similitude provisions of paragraph 1559(a) to paper commonly or commercially known as crepe paper, within the purview of paragraph 1404 of the Tariff Act of 1930, as modified by said sixth protocol, for which duty at the rate of 2½ cents per pound and 6½ per centum ad valorem is prescribed or, that the merchandise is classifiable as a nonenumerated manufactured article within paragraph 1558 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, *supra*, as supplemented by Presidential notification, 86 Treas. Dec. 347, T.D. 52827, and dutiable at the rate of 10 per centum ad valorem.

The competing paragraphs of the Tariff Act of 1930, as amended or as modified, provide as follows:

PAR. 1559. (a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles, on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

Paragraph 923, *supra:*

All manufactures, wholly or in chief value of cotton, not specially provided for:

\*          \*          \*          \*          \*          \*          \*

Other \* \* \*_____ 20% ad val.

Paragraph 1404, *supra:*

Crepe paper, commonly or commercially so known, including paper creped or partly creped in any manner, valued over 12½ cents per pound_____ 2.5¢ per lb. and 6½% ad val.

Paragraph 1558, *supra:*

Articles manufactured, in whole or in part, not specially provided for * * *_____ 10% ad val.

The record in this case consists of the testimony of 5 witnesses (2 called on behalf of the plaintiff and 3 by the defendant) and 13 exhibits (5 introduced by the plaintiff and 8 by the defendant).

Plaintiff's first witness was Mr. Jack D. Lulla, who has been associated with the research and development phase of the plaintiff-corporation's activities since 1951 in a variety of capacities, including that of research chemist, plant manager, research director and finally, vice president in charge of research. Mr. Lulla testified in substance that he was familiar with the use of creped Genotherm as a release liner for double-sided pressure sensitive tape and that the principal function of such release liner is to prevent the adhesion of adjacent layers of adhesive when the tape is wound up on a roll; that, within his knowledge and personal experience, no cotton article has been used for the same purpose as creped Genotherm; that cotton material would not make a suitable release material for double-sided pressure sensitive tapes for several reasons, namely, that the adhesive would tend to flow through the pores of the cotton, the cotton would unravel on unwinding rendering the adhesive less tacky, and finally, the porosity of the cotton would cause a gradual degradation of the tape's adhesive properties.

The witness further testified that he performed several tests comparing a double-sided pressure sensitive tape employing Genotherm as a release liner (plaintiff's exhibit 2) with an identical tape utilizing plain cotton as a release liner (plaintiff's exhibit 4). According to Mr. Lulla, the results of these tests support the conclusion that use of the Genotherm liner is conducive to a better expected performance for the double-sided pressure sensitive tape.

This witness also stated on direct examination that, at the time of importation (1959), coated crepe paper was also used as a release liner for double-sided pressure sensitive tape, and a sample of such tape with a crepe paper interliner was received in evidence as plaintiff's exhibit 5. He further testified that the imported merchandise possessed certain qualities which make it particularly suitable for use as a release liner, most notably, that Genotherm is creped into a specific geometric pattern which provides for minimum surface contact; also, Genotherm is a very rigid material, thus enabling it to retain

its creped pattern; and finally, Genotherm is chemically inactive and, thus, will not adversely affect the adhesive properties of the tape after prolonged contact with the adhesive emulsion.

The cross-examination of Mr. Lulla revealed that the crepe paper interliner on plaintiff's exhibit 5 was impregnated with a releasing compound which actually filled the interstices of the paper. Mr. Lulla further testified that he was not familiar with any plain cotton article that was used as a release liner in the pressure sensitive tape industry at the time of importation and, while he was not sure whether any treated or coated cottons were employed as interliners for pressure sensitive tapes, he did know that such treated and coated cottons were often used as interliners for rubber compound tapes. Finally, Mr. Lulla testified that practically all of the Genotherm which plaintiff purchased from the manufacturer, Kalle, A. G., of Wiesbaden, Germany, was used as a release liner for double-sided pressure sensitive tapes.

Mr. Davis S. Greenfield was called as plaintiff's second witness. At the time of importation, Mr. Greenfield was the sales representative for Kalle, A. G., a manufacturer of synthetic films including the merchandise here in issue. The essence of this witness' testimony was that Kalle, A. G., sold creped Genotherm and that plaintiff corporation purchased approximately 98 percent of the Genotherm imported into the United States.

At the close of the plaintiff's case, counsel for the defendant moved the court for an order dismissing the instant protest on the grounds that plaintiff had not made out a *prima facie* case and that the proof herein was not substantially different from the evidence adduced in *Hostachem Corporation* v. *United States*, 51 Cust. Ct. 272, Abstract 68139, a case which involved merchandise identical with that presently at bar. Decision on defendant's motion was reserved.

In disposing of this motion, we deem it appropriate to observe that the record as made by plaintiff was quite substantial, consisting of the testimony of two witnesses and five exhibits. It raised several questions which invited the court's consideration on the merits and should not be summarily disposed of on the basis of our earlier decision in the *Hostachem* case, *supra*. There were sufficient variations in the proof to warrant a reexamination of the principles enunciated in the decided case and whether or not the quantum of proof adduced was sufficient to substantiate plaintiff's claimed classification is a proposition which should be determined only after a consideration of all of the evidence of record. Accordingly, the motion to dismiss is denied.

Mr. Walter S. Kirk, manager of the tapes and abrasives division of the United Mineral and Chemical Corp., was called as defendant's first

witness. He testified that United imported into this country a cushioning and sound-deadening agent known by the trade name of "Treasmoll." A sample of this product, which consists of a strip of plastic foam to which has been laminated a strip of double-sided pressure sensitive tape, was received in evidence as defendant's exhibit A. A customs laboratory report (defendant's exhibit B) revealed that the interlining material on defendant's exhibit A was composed of a "synthetic plastics material," namely, a "polyvinyl chloride type synthetic resin."

Defendant's next witness, Dr. Charles Leslie Weidner, was an employee of the Permacel Division of the Johnson & Johnson Corp. He testified that Johnson & Johnson manufactures double-sided pressure sensitive tapes which utilize such interlining materials as crinoline cloth, impregnated and release-coated papers, and release-coated films. Defendant's exhibit C was received in evidence as representative of Permacel's pressure sensitive tape with a crinoline cloth interliner. On cross-examination, Dr. Weidner stated that an unsized cotton would not make a satisfactory release material and that, to the best of his knowledge, his firm never used an uncoated or untreated cotton fabric for this purpose.

Mr. Eugene F. Heer, an employee of the Dutch Brand Division of the Johns Manville Corp., was defendant's final witness. Mr. Heer had considerable experience in the pressure sensitive adhesive trade. He stated that his company manufactures several products which use pressure sensitive adhesives and that the major interlining materials were holland cloth and codeine-treated papers. According to the witness, holland cloth consists of a backing of cotton goods which is overlaid with a dispersion of filled starch and is later calendered to make it smooth. Mr. Heer testified that his firm used holland cloth release materials on rubber faced tapes, weather stripping, and tire patches, but on cross-examination, it was revealed that these products were adhesive on one side only.

We have engaged in a rather detailed recital of the facts in this case because of their importance to the basic issue presented here for determination: whether the collector of customs committed error in classifying the subject merchandise by similitude to manufactures of cotton.

Inherent in the collector's classification of the instant merchandise by similitude is the presumption that he has acted correctly and that he has found the existence of every fact necessary to sustain his classification. *United States* v. *Lilly & Co. and Parke, Davis & Co.*, 14 Ct. Cust. Appls. 332, T.D. 41970; *United States* v. *I. Magnin & Co., Inc.*, 21 CCPA 77, T.D. 46394. With reference to the case at bar, he has presumably found that the polyvinyl chloride film in issue most resembles a cotton article in the use to which it is applied. *Hostachem*

*Corporation* v. *United States, supra.* In order to prevail herein, it was plaintiff's burden not only to negative similarity in use to cotton articles but, also, to establish affirmatively similitude to crepe paper.

After a careful examination of the instant record, and for the reasons hereinafter detailed, we are of the opinion that plaintiff has failed to discharge the burdens imposed on it by law.

Much of the evidence adduced by plaintiff was directed toward showing that creped Genotherm would make a more satisfactory release material for double-sided pressure sensitive tapes than would cotton articles. However, the fact that the imported merchandise is preferred or superior to the prototype article is wholly irrelevant to the question of negativing similitude. *British Overseas Airways Corp. and Surface Freight Corp.* v. *United States,* 34 Cust. Ct. 411, Abstract 59166; *Scientific Packaging Corporation et al.* v. *United States,* 54 Cust. Ct. 38, C.D. 2505, affirmed, 53 CCPA 34, C.A.D. 873; *Seattle Marine & Fishing Supply Co., Robert E. Landweer & Co., Inc.* v. *United States,* 45 CCPA 93, C.A.D. 679.

In our opinion, plaintiff has failed to negative similitude of use to manufactures of cotton, which, according to the *Hostachem* case, *supra,* is indispensable to plaintiff's success in the instant action. The collector has predicated his classification in the instant situation upon similitude to an article within a *class* of articles, to wit, manufactures of cotton, not specially provided for, as distinguished from an article designated by name. The record does not establish which article within this class or which use thereof the collector selected as the prototype and, therefore, the court cannot enter upon any speculation in this regard. While we are fully appreciative of the heavy evidentiary burdens imposed upon plaintiff in the instant case, we cannot shirk the responsibilities enjoined upon the court to uphold the strict mandates of the similitude provisions.

From a fair reading of the record, it is apparent that most of plaintiff's proof was advanced to show that the imported creped Genotherm was used by plaintiff exclusively as a release material for double-faced pressure sensitive tapes and that, in that use, it differed from the way in which a plain cotton article would be used. However, to conclude from this that plaintiff had negatived similitude to manufactures of cotton would surely be a *non-sequitur.* There is absolutely no basis in the record for concluding either that creped Genotherm was a unique article or that other polyvinyl chloride film of the same class as the imported merchandise was limited in its use to that of a release material for pressure sensitive tapes. *Hostachem Corporation* v. *United States, supra.* All the instant record shows is that the imported article, creped Genotherm, and the interliner on the product known as "Teasmoll" (defendant's exhibit A) are so used but the rec-

ord is barren of probative evidence that these two articles comprise the entire class of polyvinyl chloride resinous articles which are similar in their use to the merchandise here in issue.

Moreover, assuming, *arguendo*, that all polyvinyl chloride film was so limited in its use as a release material, the record nevertheless fails to establish that the imported merchandise is not similar in use to some cotton article. That the creped Genotherm in issue is not similar in use to any *plain* cotton article finds ample support in the record. However, there is a total dearth of proof negativing similarity in use to *other* cotton articles. On the contrary, uncontradicted testimony of defendant's witness Heer affirmatively establishes that at least one cotton article, to wit, holland cloth, was used for the same purpose as the imported merchandise and whether or not other cotton articles, falling within the scope of paragraph 923 are employed for similar purposes, there is no evidence to rebut the persumption to that effect inherent in the collector's classification.

In addition, the record affirmatively shows that crepe paper was also used as a release liner in a similar fashion to the imported material.

By virtue of the current text of the similitude provisions which is quoted, *supra*, use is the sole determinant of statutory similarity unless it be shown that the imported article equally resembles in use two or more enumerated articles subject to different rates of duty. *Ignaz Strauss & Co., Inc., et al.* v. *United States*, 45 Cust. Ct. 161, C.D. 2218; *Scientific Packaging Corporation* v. *United States, supra*. Where equal similarity with respect to use exists, the statute prescribes that the imported article shall be subject to the rate of duty applicable to that enumerated article which it most resembles with respect to the materials of which it is composed.

Since there is an apparent equal similarity of use between cotton articles and crepe paper on the one hand and polyvinyl chloride film on the other, insofar as their adaptation for the purposes of release material is concerned, consideration of the resemblances in respect of the materials of which they are composed becomes necessary. Not only does the record fail to demonstrate that there is a similarity in material between crepe paper and polyvinyl chloride film, it also fails to show whether cotton or paper more closely resembles the imported article in respect to material. That both the subject merchandise and the claimed prototype are creped and tear easily is not in the least determinative of the question under inquiry since the aforementioned are merely properties of the two materials and do not constitute similarity with respect to materials within the intendment of the similitude provisions.

Thus, on the quantum of proof adduced herein, we conclude that plaintiff has failed to overcome the presumptively correct classification

of the instant merchandise by similitude to manufactures of cotton, not specially provided for. The record is lacking in evidentiary support either negativing similitude to cotton articles or establishing affirmatively similitude to crepe paper. Accordingly, all claims in the protest are overruled.

Judgment will be entered accordingly.