(C.D. 4071)

International Polyethylene Bag Co., Inc. *v.* United States

United States Customs Court, First Division

(Decided September 3, 1970)

*Stein & Shostak* (*S. Richard Shostak* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Owen J. Rader* and *Herbert P. Larsen*, trial attorneys, for the defendant.

Before WATSON and MALETZ, Judges, and WILSON, Senior Judge

WILSON, Judge: These three protests, consolidated for trial, involve eight entries of merchandise at the port of Los Angeles between

November 20, 1962 and May 29, 1963 exported from Hong Kong. The importations were invoiced and entered as "Polyethylene Bags." Defendant's brief, page 1 states: "It is undisputed that this is a correct description, and that the merchandise is, in fact, composed of polyethylene." Furthermore, defendant concedes "that the merchandise at bar is not classifiable, *directly*, under any of the provisions of the Tariff Act of 1930 in effect at the time of importation."

The official papers were received in evidence without being marked. Counsel stipulated that illustrative exhibits 1 and 2 "are representative of all the merchandise covered by all the invoices, with the exception of gauges and dimensions." The imported merchandise consists of various gauges and sizes.

The collector of customs classified the involved material by *similitude* to "Manufactures of india rubber or gutta-percha, or of which these substances, or either of them is the component material of chief value, not specially provided for (except * * *)", other, at 12½ per centum ad valorem under paragraph 1537(b) of the Tariff Act of 1930, as modified by T.D. 53865.

Plaintiff claims that this merchandise is properly dutiable at 8½ per centum ad valorem under paragraph 1558 by similitude under the provisions for "All articles manufactured, in whole or in part, not specially provided for: Synthetic rubber and synthetic rubber articles" in T.D. 54108.

*Alternatively*, plaintiff claims that this merchandise is properly dutiable at only 10 per centum ad valorem under paragraph 1558, as modified by T.D. 52739, as a nonenumerated manufactured article under the provisions for "Articles manufactured, in whole or in part, not specially provided for (except * * * synthetic rubber and synthetic rubber articles * * *)."

The record herein consists of the oral testimony of three witnesses, Morton Weiss and Isidore Lebowitz for the plaintiff, and Albert H. Schneider for the defendant. Exhibits 1 and 2 are polyethylene bags. Exhibit A for *identification* consists of photocopies of several pages of a book, referred to as Chapter 18, pages 612, 627 and 628, which were held by the trial judge to be inadmissible.

The issue here presented is whether the imported merchandise was properly classified and assessed by the collector by similitude to manufactures wholly or in chief value of gutta-percha or india rubber under paragraph 1537(b), Tariff Act of 1930, as modified, by virtue of paragraph 1559(a) of said act, as amended by the Customs Simplification Act of 1954, or whether as claimed by plaintiff the polyethylene bags should be classified and assessed by similitude to articles of synthetic rubber provided for *eo nomine* in paragraph

1558 of the act, as modified, or alternatively under paragraph 1558 at 10 per centum ad valorem as nonenumerated manufactured articles.

The collector's action in classifying this merchandise by *similitude* to manufactures wholly or in chief value of india rubber or gutta-percha carries with it the presumption that it is not dutiable directly under any of the express enumerations in Title I of the Tariff Act of 1930, and/or as amended or modified. *Scientific Packaging Corporation, A. N. Deringer, Inc.* v. *United States*, 54 Cust. Ct. 38, C.D. 2505 (1965), affirmed *Same* v. *Same*, 53 CCPA 34, C.A.D. 873 (1966).

In the foregoing case, the trial court, 54 Cust. Ct. 38, C.D. 2505, noted that polyethylene bags were classified by *similitude* to manufactures of cotton in paragraph 1559, Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, and were assessed with duty at 20 per centum ad valorem pursuant to the provisions of paragraph 923 of the Tariff Act of 1930, as modified by prevailing trade agreement. The court also noted at page 42 that the present provision differs from its predecessors which included, as relevant determinants of similitude, not only use, but also material, quality, and texture; that in eliminating these three last mentioned properties as significant tests of *similitude*, the court did *not* believe that the legislature contemplated any different construction of the scope of the use factor than had previously obtained. The court cited *Corporacion Argentina de Productores de Carnes* v. *United States*, 29 CCPA 288, 293, C.A.D. 204 (1942), and quoted therefrom as follows:

> "The similitude clause does not require that the resemblance should be in all four of the particulars mentioned—material, quality, texture, and use—a substantial similarity in one of those particulars being adequate. * * *"

Plaintiff's witness, Morton Weiss, testified that he had been president of plaintiff corporation for seven years; that prior thereto he was president of C. & W. Paper Company, Inc., which jobbed annually approximately $750,000 of packaging materials, wrapping paper, plastics, tapes and cartons; that plaintiff is a manufacturer, converter, and importer of polyethylene and plastic; that as a converter, it prints and manufactures bags of polyethylene material. The witness further stated that he had studied chemical engineering at the University of Southern California, and had taken courses, which he passed, in qualitative and quantitative analyses; that he attended trade shows in the packaging business at New York and Chicago each year, at which problems in the packaging industry were discussed with polyethylene manufacturers, machinery manufacturers and material manufacturers. This witness was well qualified to testify on the questions involved.

Weiss also testified that plaintiff manufactures and imports millions of polyethylene bags each year; that his firm was an authorized converter for several large firms who deal in polyethylene material. He identified exhibit 1 as representative of the invoiced item in entry 64351 in protest 64/3050(D), and said it was a gusseted material made from tubing stock. He identified exhibit 2 as a polyethylene bag described on page 2 of the invoice in entry 45164, covered by protest 64/3021(D). Mr. Weiss also testified that polyethylene bags are acceptable and used in every type of packaging common "today in marketing" such as hardware, electronics, foods, cotton goods, display and shipping purposes and for solid and semisolid items, except for oil. He said that such bags have been on the market since 1946 or 1947 and have been commonplace since 1952. Mr. Weiss also testified that polyethylene bags are manufactured either from tubing or flat stock, in large part from tubing, and that the bags here involved were made from tubing. The witness pointed out several differences in properties and practical uses of polyethylene and cellophane bags. He stated that only in rare instances can cellophane be used for the purposes for which polyethylene is commercially feasible. He admitted he had no familiarity with india rubber or gutta-percha. He further testified that in his experience he had never seen containers or bags of the nature of the polyethylene bags at bar, made of natural rubber, india rubber or gutta-percha, and that he had not seen any other kind of bags made of those materials used for the same purposes as the polyethylene bags at bar.

Plaintiff's witness, Isidore Lebowitz, testified that he received a degree in chemistry from New York University in 1932; that he had been in the packaging industry for 12 years; that for 10 years he was with Kleerpak Manufacturing Company in North Hollywood, California, as operations manager and as general manager of plaintiff since then; that while with Kleerpak, he was in charge of the manufacturing of flexible films including polyethylene, cellophane, Pliofilm and laminated films; that he printed Pliofilm for sale to produce packers. The witness further stated that rolls of Pliofilm were run through specialized printing presses used for printing of all flexible film so as to identify weight and special usage of the item to be packed and delivered into the field where it was to be used. Mr. Lebowitz stated that he heard the testimony of Mr. Weiss and his testimony would not differ in any respect he could recall. In his experience in the packaging trade, he never heard of bags similar to those at bar made of packaging materials of natural rubber, india rubber, or gutta-percha.

He stated that Pliofilm is rubber hydrochloride which is a synthetic rubber; that the uses of polyethylene are the same as for Pliofilm;

that the latter was very expensive pricewise, but the uses were identical. Mr. Lebowitz further testified that cellophane can be used for packaging of hardware, electrical parts, plastic toys, food products, such as meats, cheeses and vegetables. The witness also stated that *if* the Food & Drug Administration approved cellulose acetate for food packaging "it might conceivably be used for it." He stated further that rubber hydrochloride is a plastic made of modified natural rubber; that the Pliofilm is natural rubber hydrochloride. Mr. Lebowitz thought that Pliofilm can be vulcanized but said, "I am not sure. * * * My experience goes generally to heat sealing, which is what packaging is all about." He testified that cellophane dries out and tends to become brittle through evaporation and cannot practically be made into a large enough size to be handled; that it is rather weak in resistance to abrasion, and has a tendency to fall apart after a while and can not serve the purpose for which it was intended. The involved bags do not contain free carbon black in them, according to the witness.

The overall testimony of this witness discloses personal familiarity with polyethylene bags and other items used in the packaging industry with which he made comparisons.

Defendant's witness, Albert H. Schneider, testified that he was employed by the U.S. Customs Laboratory on Terminal Island as chief chemist; that he has a bachelor of arts degree in chemistry from the University of Redlands; that he belongs to both the local section and the national association of the American Chemical Society and to the American Society for Testing Materials; that as chief chemist he supervises the laboratory and analyzes imported materials for the purpose of helping other persons in customs to determine the rates of duty and classification of these imported products; that he had occasion to test rubber and plastics; that he has been engaged in this field for approximately 20 years; that in his opinion rubber hydrochloride is not a synthetic rubber; that rubber hydrochloride does not have the principal properties of rubber such as stretchability and returning to its original shape when stretched. It is not vulcanizable. Rubber hydrochloride is a thermoplastic and. is made from natural rubber.

Under cross-examination Schneider testified that he had nothing to do with the classification of the merchandise at bar, "except reporting the composition, etc., of various products"; that in his examination and supervisory capacity, he comes in contact with various provisions of the tariff act; that he has *not* read paragraph 1537(b) involving manufactures of rubber, india rubber and gutta-percha, which was in existence prior to September 1, 1963; that he knows

the difference between classification directly and by similitude; that the merchandise at bar is polyethylene plastic bags and *not* rubber; that he has not had any special training in reference to rubber, but has had considerable experience with analyses of rubbers and synthetic rubbers in the Customs Laboratory. He stated that rubber or synthetic rubbers have enough stretchability in their raw state without any compound added to them.

In *Scientific Packaging Corporation, A. N. Deringer, Inc.* v. *United States*, 54 Cust. Ct. 38, C.D. 2505 (1965), affirmed in *Scientific Packaging Corp., A. N. Deringer, Inc.* v. *United States*, 53 CCPA 34, C.A.D. 873 (1966), the collector of customs invoked the similitude provision of paragraph 1559 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, to classify certain polyethylene bags which were encased in cardboard tubes, within the provisions of paragraph 923 of the Tariff Act of 1930, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865 (1955), supplemented by Presidential Notification, 90 Treas. Dec. 280, T.D. 53877 (1955), as manufactures of cotton, not specially provided for at 20 per centum ad valorem.

The trial court deemed it pertinent to observe that in view of the text of the foregoing provisions and under settled principles of law, the collector's action in classifying the merchandise by similitude to manufactures of cotton presupposes that it is not dutiable directly under any of the express enumerations in Title I of the Tariff Act of 1930, and/or as amended or modified. (Cases cited.) The court further stated that the collector's classification is presumptively correct and that he found every fact to exist which was essential to his decision. (Cases cited.)

The court also indicated that the polyethylene bags there involved are suspectible of many uses described in the record and mentioned on the dispensing machine. It was apparent to this court that the major and primary use of the bags was for the purpose of transporting wash to and from coin-operated self-service laundries and that any other use was either incidental or potential.

The expressions of the trial court, *supra*, are apropos in the case at bar. The collector's classification by similitude to "Manufactures of india rubber or gutta-percha, or of which these substances, or either of them is the component material of chief value, not specially provided for (except * * *)", other, presupposes that it is not dutiable directly under any of the express enumerations in Title I of the Tariff Act of 1930, and/or as amended or modified. *Zenith Novelty Co. et al.* v. *United States*, 49 Cust. Ct. 215, 216, Abstract 67011 (1962). The collector's classification herein is presumptively correct and it must

be presumed that he found every fact to exist which was essential to his decision. The polyethylene bags here involved are susceptible of many uses described in the record. It is apparent to this court, on the record herein, that the polyethylene bags here involved were quantitatively acceptible and primarily used in virtually every type of packaging common today, and for retail display and shipping purposes.

Synthetic rubber and synthetic rubber articles are provided for *eo nomine* in paragraph 1558. This includes all forms thereof. *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, T.D. 47464 (1935); *United States* v. *Weather-Rite Sportswear Co., Inc.*, 52 CCPA 7, C.A.D. 848 (1964).

Plaintiff contends the record establishes that the polyethylene bags under consideration are similar to Pliofilm bags which were classified under paragraph 1558, as modified by T.D. 54108, as synthetic rubber articles. Hence, it is claimed that the involved polyethylene bags are subject to classification by similitude to synthetic rubber articles provided for in paragraph 1558. This court does agree on the record herein that the importations under consideration are most similar in use to Pliofilm.

Moreover, the polyethylene bags involved herein are properly classifiable by similitude to articles under the *eo nomine* provisions for synthetic rubber articles in paragraph 1558, as modified, as contended for and claimed by plaintiff. They are not classifiable under the nonenumerated manufactured articles provision in paragraph 1558, as modified.

An *eo nomine* provision has been held to be more specific than a classification by component material. *Dollar Trading Corp.* v. *United States*, 64 Cust. Ct. 153, C.D. 3975 (1970); *Rohner Gehrig & Co., Inc., et al.* v. *United States*, 39 Cust. Ct. 329, Abstract 60941 (1957).

Consideration has been given to the respective arguments of counsel and to the various cases cited in the briefs. However, the court is of the view that the classification made by the collector of customs has been shown to be erroneous, and that plaintiff has established that the importations should properly be classified by similitude to articles of synthetic rubber provided for in paragraph 1558, as modified by T.D. 54108, with duty at 8½ per centum ad valorem.

Therefore, judgment will be entered affirming the protest claim under paragraph 1558, as modified by T.D. 54108, and overruling the alternate claim under paragraph 1558, as modified by T.D. 52739, with duty at 10 per centum ad valorem.

Judgment will be entered accordingly.